UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAN SHELLEY, MICHELLE LOFTIS, SANDRA HOYOPATUBBI,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN JOAQUIN; SHERIFF STEVE MOORE, in his official and individual capacities; and DOES 1 through 50, inclusive,<br><br>Defendants. | No. 2:13-cv-00266-MCE-DAD<br><br>**MEMORANDUM AND ORDER** |

Plaintiffs Joan Shelley, Michelle Loftis and Sandra Hoyopatubbi (collectively "Plaintiffs") allege violations of federal constitutional law and state tort law by municipal defendants, the County of San Joaquin and San Joaquin County Sheriff Steve Moore (collectively "Defendants"); Plaintiffs also sue Sheriff Moore in his individual capacity for damages.  This case concerns the exhumation of the body of Plaintiffs' relative, Jo Ann Hobson, by the San Joaquin County Sheriff's Department.  Plaintiffs allege the Sheriff's Department exhumed Ms. Hobson's body in a tortious and unconstitutional manner, and sue, asserting violations of the Fourteenth Amendment under 42 U.S.C. § 1983 and various tort claims under California law.

///

Presently before the Court is Defendants' Motion to Dismiss ("Motion") each of Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6),[1] (Mem. P. & A. Supp. Mot. to Dismiss ("Mot. to Dismiss"), ECF No. 7-1), which Plaintiffs oppose.  (Opp'n to Defs.' Mot. to Dismiss ("Opp'n"), ECF No. 10.)  For the following reasons, Defendants' Motion is GRANTED in part and DENIED in part.[2]

## BACKGROUND[3]

Jo Ann Hobson went missing at age fifteen in 1985, and it was suspected she was a murder victim of Loren Herzog and Wesley Shermantine, commonly referred to as the "Speed Freak Killers."  In 2012, the San Joaquin Sheriff's Department received information from Shermantine that Hobson's body, along with the bodies of other victims, was located at the bottom of an abandoned well.  The Sheriff's Department proceeded to the well site to exhume the bodies.

Plaintiffs allege Defendants "ordered the well to be rapidly turned up with a back hoe."  (Compl. ¶ 9, ECF No. 2.)  "Defendants ordered the digging with the back hoe to continue <u>after</u> bones were discovered."  (Id.)  "Thereafter, in the presence of Joan Shelley, and with invited television and news organizations observing, Defendants . . . caused the skeletal remains of Jo Ann Hobson . . . to be chewed up, pulverized, destroyed, crushed and commingled with other unknown murder victims."  (<u>Id.</u>)

///
///
///

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[2] Finding that oral argument would not be of material assistance, the Court previously ordered this matter submitted on the briefs.  E.D. Cal. Local R. 78-230(g).

[3] The following recitation of facts is derived, sometimes verbatim, from Plaintiffs' Complaint.  (ECF No. 2.)

   Moreover, Plaintiffs allege Defendants "held the skeletal remains of Jo Ann Hobson and would not release them to Plaintiffs for burial or disposition" until several months later, when "Defendants turned over the chopped up and purported remains of Jo Ann Hobson, by sending them to the mortuary for cremation." (Id. ¶ 10.)

   "Out of concern that the remains . . . might not be those of her daughter, Plaintiff Joan Shelley" had the "remains photographed and evaluated by Erick Bartelink, Ph.D., professor of forensic anthropology at Chico State University." (Id.) Dr. Bartelink's review "revealed that at least three, and perhaps more individuals were contained in the body bag of bones Defendants had released for cremation. At least one of these bones [was] identified by DNA evidence as belonging to Kimberly Billy and not to Jo Ann Hobson." (Id.) "Further, the forensic evaluation . . . documented that not all of Jo Ann Hobson's remains [were] turned over," which leads Plaintiffs to "believe that within the remains that Defendant[s] passed off as belonging to Kimberly Billy, are the missing remains of [Plaintiffs'] daughter and sister Jo Ann Hobson." (Id.)

   Jo Ann Hobson's mother and sisters (collectively "Plaintiffs") assert state law claims for negligence and emotional distress, and assert Defendants deprived Plaintiffs of their constitutional property rights in Jo Ann Hobson's remains under 42 U.S.C. § 1983.

## STANDARD

   On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the non-moving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant a fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (1997) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

1  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed
2  factual allegations. Id.  However, "a plaintiff's obligations to provide the grounds of his
3  entitlement to relief requires more than labels and conclusions, and a formulaic recitation
4  of the elements of a cause of action will not do." Id. (citations and internal quotation
5  marks omitted).  A court is not required to accept as true a "legal conclusion couched as
6  a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly,
7  550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the
8  speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R.
9  Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading
10 must contain something more than a "statement of facts that merely creates a suspicion
11 [of] a legally cognizable right of action.")).
12         Furthermore, "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket
13 assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (citations and internal
14 quotation marks omitted). "Without some factual allegation in the complaint, it is hard to
15 see how a claimant could satisfy the requirements of providing not only 'fair notice' of the
16 nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Wright &
17 Miller, supra, § 1202). A pleading must contain "only enough facts to state a claim to
18 relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their
19 claims across the line from conceivable to plausible, their complaint must be dismissed."
20 Id. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that
21 actual proof of those facts is improbable, and 'that a recovery is very remote and
22 unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

4

# ANALYSIS

### A. Plaintiffs' § 1983 Claim Against Sheriff Moore Individually

Plaintiffs sue Sheriff Moore in his individual capacity for damages under § 1983, alleging Sheriff Moore acted under color of state law to deprive Plaintiffs' of their property interest in the remains of Jo Ann Hobson without due process in violation of their constitutional rights under the Fourteenth Amendment.  Sheriff Moore moves to dismiss this claim asserting qualified immunity and arguing, inter alia, the property interest in the remains of relatives was not "clearly established law."  (Mot. to Dismiss 17:21–18:13.)  Thus, Defendants' Motion forces the Court to decide at this early stage of the litigation[4] whether Plaintiffs' asserted property interest in the remains of their relative was "clearly established law" at that time for purposes of qualified immunity.  For the reasons stated below, the Court holds that it was not and grants this portion of Defendants' Motion.

#### 1. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009).  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.  When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'"

---

[4] See Saucier v. Katz, 533 U.S. 194, 200–01 (2001) ("Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'  [Because] [t]he privilege is 'an immunity from suit rather than a mere defense to liability[,] . . . it is effectively lost if a case is erroneously permitted to go to trial.'  As a result, 'we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" (citations omitted)).

1  Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011) (quoting Malley v. Briggs, 475 U.S.
2  335, 341 (1986)).  In deciding whether an official is entitled to qualified immunity, the
3  Supreme Court has articulated a two-prong approach: first, whether the officer's conduct
4  violated a constitutional right; and second, whether the right was clearly established.
5  Pearson, 555 U.S. at 232.  "[J]udges of the district courts . . . [are] permitted to exercise
6  their sound discretion in deciding which of the two prongs of the qualified immunity
7  analysis should be addressed first."  Id. at 236.

8       Because resolution of the constitutional question in this case turns in part on an
9  "uncertain interpretation of state law," id. at 238,[5] the Court addresses the second prong
10 —whether the purported property interest was "clearly established by prior case law"—
11 first, "without opining as to the constitutionality of the conduct."  Krainski v. Nevada,
12 616 F.3d 963, 971 (9th Cir. 2010).

13

14                 **2.  Clearly Established Law**

15

16      Plaintiffs' Fourteenth Amendment "procedural due process claim has two
17 elements: deprivation of a constitutionally protected liberty or property interest and denial
18 of adequate procedural protection."  Krainski, 616 F.3d at 970 (citing Brewster v. Bd. of
19 Educ. of the Lynwood Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir. 1998)).  Defendants
20 do not argue Plaintiffs were provided "adequate procedural protection"; therefore, the
21 only issue is whether Plaintiffs' asserted property interest in the remains of their relative
22 amounted to a "constitutionally protected property interest" under clearly established law.
23      To be "clearly established law," existing precedent must have established the
24 asserted constitutional right, and must have sufficiently defined the specific contours of
25 the asserted constitutional right such "that every 'reasonable official would have
26 understood that what he is doing violates that right.'"

27 ─────────────
[5] As discussed below, whether Plaintiffs' asserted interest in the remains of their relative amounts
28 to a "property interest" for constitutional due process is determined by reference to state law.  See infra
subpart A.2.

al-Kidd, 131 S. Ct. at 2083 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)); accord Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (emphasizing "that this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'"). In determining the content and contours of clearly established law, this Court considers Supreme Court and Ninth Circuit precedent existing at the time of the alleged act. Cmty. House, Inc. v. City of Boise, 623 F.3d 945, 967 (9th Cir.2010). "[I]n the absence of binding precedent," this Court "'look[s] to whatever decisional law is available to ascertain whether the law is clearly established' for qualified immunity purposes, 'including decisions of state courts, other circuits, and district courts.'" Boyd v. Benton Cnty., 374 F.3d 773, 781 (9th Cir. 2004) (quoting Drummond v. City of Anaheim, 343 F.3d 1052, 1060 (9th Cir. 2003)). "[A] case directly on point" is not required, "but existing precedent must have placed the statutory or constitutional question beyond debate." al-Kidd, 131 S. Ct. at 2083.

Moreover, state court decisions are particularly significant if the underlying constitutional question is determined by reference to state law. See Prue v. City of Syracuse, 26 F.3d 14, 18 (2d Cir. 1994) (holding that a deprivation of a "constitutionally protected 'property interest'" was not clearly established by analyzing New York Court of Appeals decisions, even with a binding federal decision on point (citing Economico v. Village of Pelham, 405 N.E.2d 694 (N.Y. 1980); Prue v. Hunt, 581 N.E.2d 1052 (N.Y. 1991)); 2 Sheldon H. Nahmod, Civil Rights & Civil Liberties Litigation: The Law of Section 1983, § 8:22 (4th ed. 2008) ("[W]hile the qualified immunity focus is obviously on federal law, unsettled state law, at least in the procedural due process setting, can sometimes lead to qualified immunity protection for a defendant even though the relevant federal law is clearly settled."). This is so because "[p]roperty interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972).

///

"To have a property interest" for purposes of constitutional due process, "a person clearly must have more than an abstract need or desire," and "more than a unilateral expectation"; the interest must amount to a "legitimate claim of entitlement." Roth, 408 U.S. at 577.  Thus, a federal court—even the court of appeals for a particular circuit—deciding whether a "claim of entitlement" constitutes a constitutionally protected "property interest" does "not craft substantive law regarding [a state's] property interests. Rather, it ma[kes] its best prediction as to what the [state's] Supreme Court would say about the matter, given the opportunity." Waeschle v. Dragovic, 687 F.3d 292, 295 (6th Cir. 2012).

Here, the content of the asserted constitutional right—next of kins' property interest in the remains of their relatives—was not "beyond debate" at the time of the challenged conduct. al-Kidd, 131 S. Ct. at 2083.  The U.S. Supreme Court had not addressed this question, let alone decided it.  The few U.S. Courts of Appeals that have considered the question have sharply divided. Compare Waeschle, 687 F.3d at 295 ("[A] next of kin does not have a property interest in a decedent's brain that was removed and retained pursuant to a lawful investigation."), with Newman v. Sathyavaglswaran, 287 F.3d 786, 796–97 (9th Cir. 2002) ("[W]e hold that the parents had property interests in the corneas of their deceased children protected by the Due Process Clause of the Fourteenth Amendment.").  And California courts have concluded: "'there is no property in a dead body' in California." Perryman v. Cnty. of Los Angeles, 153 Cal. App. 4th 1189 (2007), review granted and opinion superseded on other grounds by 171 P.3d 2 (Cal. 2007) (citing Enos v. Snyder, 131 Cal. 68, 69 (1900); Gray v. S. Pac. Co., 21 Cal. App. 2d 240, 246 (1937)) (holding "decedent's remains are not property, and the coroner and the coroner's employees have no mandatory statutory duty or common law duty to treat human remains as if they were operating a mortuary or crematory.").

As more than one scholar has observed, whether a person has a property interest in the remains of her relatives is still an open question.

1  ///

2  See, e.g., M.H. Klaiman, Ph.D., M.D., J.D., Whose Brain Is It Anyway?  The
Comparative Law of Post-Mortem Organ Retention, 26 J. LEGAL MED. 475, 479–80
(2005) ("Early in American jurisprudence, courts began to question the no-property rule
and in some cases it was reversed, with courts deeming possession of a body for the
purpose of burial a cognizable property right.  Today, as a general proposition, this view
is discredited, because survivors may possess remains pending their lawful disposition
but may not do what they wish with a corpse, such as dispose of it in a manner
inconsistent with local ordinances." (footnote omitted) (collecting cases)); Radhika Rao,
Property, Privacy, and the Human Body, 80 B.U. L. REV. 359, 385–86 (2000) ("Several
courts and commentators have suggested that the concept of a quasi-property right in a
corpse is actually a legal fiction created to enable relatives to recover for the tort of
mental distress. . . .  In recognition of this insight, courts have moved towards
abandoning the quasi-property theory in favor of a tort theory.  More recent cases thus
allow a cause of action for interference with a relative's right to possess a corpse and
prevent its disturbance under the rubric of personal rather than property rights in the
body . . . ." (footnotes omitted)); Restatement (Second) of Torts § 868 cmt.a (1979) ("The
technical basis of the cause of action is the interference with the exclusive right of control
of the body, which frequently has been called by the courts a 'property' or a 'quasi-
property' right.  This does not, however, fit very well into the category of property, since
the body ordinarily cannot be sold or transferred, has no utility and can be used only for
the one purpose of interment or cremation.  In practice, the technical right has served as
a mere peg upon which to hang damages for the mental distress inflicted upon the
survivor; and, in reality, the cause of action has been exclusively one for the mental
distress.").  Therefore, the content of the constitutional right in question was not beyond
debate.

///

///

///

Plaintiffs argue that the Ninth Circuit's decision in Newman v. Sathyavaglswaran, 287 F.3d 786 (9th Cir. 2002), clearly "established the precedent that law enforcement must afford the next of kin due process before depriving a family of a relative's remains," and therefore, Plaintiffs' "rights were established at the time [Sheriff] Moore destroyed Jo Ann Hobson's remains." (Opp'n 5:21–25.) In essence, Plaintiffs contend Newman clearly established a constitutionally protected property interest in the remains of relatives within the Ninth Circuit. However, the Court does not read the holding in Newman so broadly.

In Newman, the L.A. County Coroner obtained the bodies of dead children and removed their corneas—without notifying the parents or obtaining their consent—under a California statute authorizing "the coroner" to "remove and release . . . corneal eye tissue from a body within the coroner's custody, if . . . [t]he coroner has no knowledge of objection . . . ." Newman, 287 F.3d at 788 & n.1 (quoting Cal. Gov't Code § 27491.47(a)). The children's parents sued, asserting a deprivation of their property interest in their children's corneal tissue without due process, and the district court granted defendants' motion to dismiss without opinion; the Ninth Circuit reversed.

The Newman court cited the dearth of precedent on the issue, and then conducted a lengthy historical survey. First, the Newman court observed that the U.S. Supreme Court "has not yet had occasion to address whether" next of kin's interests in the remains of their relatives "are property interests protected by the Due Process Clause." Id. at 789. Moreover, the court noted that only one federal circuit court had addressed the issue: "[T]he Sixth Circuit, the only federal circuit to address the issue until now, held that the interests of next of kin in dead bodies recognized in Michigan and Ohio allowed next of kin to bring § 1983 actions challenging . . . cornea removal statutes similar to California's." Newman, 287 F.3d at 795 (citing Whaley v. Cnty. of Tuscola, 58 F.3d 111 (6th Cir. 1995); Bortherton v. Cleveland, 923 F.2d 477 (6th Cir. 1991)).

///

1   The Newman court also analyzed historical and state law sources. The court observed that although traditional practices dating back to ancient Rome recognized the rights of next of kin concerning burial of relatives, "[m]any American courts adopted Blackstone's description of the common law, holding that a 'dead body is not the subject of property right.'" Id. at 791 (quoting Bessemer Land & Improvement Co. v. Jenkins, 18 So. 565, 567 (Ala. 1895)). For example, the court in Newman observed, in Enos v. Snyder, the California Supreme Court held "in the absence of statutory provisions, there is no property interest in a dead body." Id. at 793 (quoting Enos v. Snyder, 131 Cal. 68 (1900)). However, the Newman court noted that the California Supreme Court ultimately "upheld the interests of next of kin in relation to dead bodies" in Enos. Id. (citing Enos, 131 Cal. at 69).

Ultimately, the Newman court adopted the reasoning of the Sixth Circuit in Whaley and Bortherton, and applied that reasoning to California's adoption of the Uniform Anatomical Gift Act, in which California "statutorily recognized other important rights of the parents in relation to the bodies of their deceased children—the right to transfer body parts and refuse to allow their transfer." 287 F.3d at 796 (citing Cal. Health & Safety Code § 7151.5). The Newman court was careful to note it was not broadly recognizing a property right in all remains, reasoning, for example, that its holding in no way undermines the "California law governing the state's duty to conduct autopsies to determine the cause of death which may be performed contrary to the wishes of the individual or next of kin." Newman, 287 F.3d at 798 n.15.

Accordingly, this Court takes the Ninth Circuit at its word, when it stated: "[W]e hold that the parents had property interests in the corneas of their deceased children protected by the Due Process Clause of the Fourteenth Amendment." 287 F.3d at 796-97. This narrow holding about corneal tissue—a body part—followed from the statutes specifically pertaining to anatomical gifts, and thus did not clearly establish a broader property interest to the entire body.

///

Cf. Newman, 287 F.3d at 798 n.15 ("[A]utopsies to determine the cause of death . . . may be performed contrary to the wishes of the individual or next of kin.").

This Court's conclusion is consistent with the view of the only other district court to interpret the decision, which found that Newman is limited to the corneal-tissue context. In Picon v. Cnty. of San Mateo, No. C-08-766 SC, 2008 WL 2705576 (N.D. Cal. July 10, 2008), the coroner retained Nicholas Picon's heart after an autopsy and released the remainder of his body to the funeral home. Picon's parents first learned that the coroner had retained the heart after the funeral. The coroner eventually returned the heart, but Picon's parents sued asserting the one-month delay deprived them of their property interest in the remains of their son without due process. The court held the Ninth Circuit's "conclusion in [Newman] cannot be extended to body parts other than corneas." Id. at *3. The court reasoned that the Newman court "acknowledged more than once that the provisions governing the disposition of corneas were different from those governing the disposition of other body parts." Id. Because the "provision governing corneas in Newman . . . [includes an] allowance for objection," whereas the statute concerning autopsies grants a "right to retain parts of the body" notwithstanding objection, the court held there was no property interest and dismissed plaintiffs' claim. Id. at *4.

Moreover, as Defendants point out in reply, the facts in Newman—parents' rights to prevent removal of their dead children's corneal tissue against their wishes—are distinguishable from the facts of this case—"the recovery of human remains" twenty seven years after "a murder." (Reply to Pl.'s Opp'n Mot. to Dismiss 2:9–12, ECF No. 11.) Because Newman is at least arguably distinguishable, Defendants have shown that the "contours of" Plaintiffs' asserted constitutional right were not "sufficiently clear that a reasonable official would understand that what he [was] doing violate[d] that right." Anderson v. Creighton, 483 U.S. at 640; accord Alston v. Read, 663 F.3d 1094, 1099 (9th Cir. 2011).

///

Finally, the Ninth Circuit's decision in Newman does not clearly establish whether California recognizes a next of kin's property right to relative's remains.  For example, the two Sixth Circuit decisions—that the court in Newman agreed with and applied, 287 F.3d at 796[6]—held that next of kin had a constitutionally protected property interest in the corneal tissue of relatives, interpreting Michigan and Ohio law.  Whaley v. Cnty. of Tuscola, 58 F.3d 1111 (6th Cir. 1995) (Michigan); Bortherton v. Cleveland, 923 F.2d 477 (6th Cir. 1991) (Ohio).  But both of those decisions have since been effectively overruled by the Michigan and Ohio supreme courts respectively on certified questions, as the Sixth Circuit itself later recognized.  Waeschle, 687 F.3d at 295 ("Under Michigan law, a next of kin does not have a property interest in a decedent's brain that was removed and retained pursuant to a lawful investigation." (citing In re Certified Question from U.S. Dist. Court for E. Dist. of Mich., 793 N.W.2d 560 (Mich. 2010)); Albrecht v. Treon, 617 F.3d 890, 896 (6th Cir. 2010) ("[T]here is no property right to autopsy specimens removed and retained for purposes of a lawful criminal investigation." (citing Albrecht v. Treon, 889 N.E.2d 120 (Ohio 2008) (certified question))).  The subsequent history of the Sixth Circuit cases Newman relied on demonstrates that federal courts cannot "craft substantive law regarding [state] property interests.  Rather, [they make their] best prediction as to what the [appropriate state's] Supreme Court would say about the matter, given the opportunity."  Waeschle, 687 F.3d at 295.  The Ninth Circuit's best prediction about what the California Supreme Court would say if given the opportunity does not clearly establish the constitutional right.

Moreover, California courts have been reluctant to recognize property interests in human tissue.  In addition to Enos, in which the California Supreme Court held "there is no property interest in a dead body," 131 Cal. at 69, more recently, the California Supreme Court in Moore v. Regents of University of California declined to recognize a patient's property interest in his discarded tissue.  51 Cal. 3d 120, 136–38 (1990).

---

[6] "We agree with the reasoning of the Sixth Circuit and believe that reasoning is applicable here." Newman, 287 F.3d at 796.

13

The court observed that there was no authority for the proposition that human tissue could be property for purposes of a conversion action, and importantly, discussed separately corneal tissue and dead bodies:

> Neither the Court of Appeal's opinion, the parties' briefs, nor our research discloses a case holding that a person retains a sufficient interest in excised cells to support a cause of action for conversion. We do not find this surprising, since the laws governing such things as human tissues, transplantable organs, blood, fetuses, pituitary glands, <u>corneal tissue</u>, and <u>dead bodies</u> deal with human biological materials as objects sui generis, <u>regulating their disposition to achieve policy goals rather than abandoning them to the general law of personal property</u>.

<u>Id.</u> at 137 (emphasis added) (footnotes omitted) (collecting sources).

Accordingly, no California state court has agreed with or applied <u>Newman</u>. On the contrary, one California appeal court has gone so far as to say <u>Newman</u> was wrongly decided. In <u>Perryman</u>, California's Second District Court of Appeal stated:

> To find a section 1983 violation, the federal court is supposed to <u>apply</u> state law, not <u>rewrite</u> it. The <u>Newman</u> court shrugged off over 100 years of California case authority to write an entirely new rule regarding property rights in dead bodies. . . . The dissent in <u>Newman</u> is correct: California law creates "merely a right to possession" of a corpse for the limited purpose of carrying out burial duties, but "decidedly does not confer a property right upon anyone." <u>Newman</u>, 287 F.3d at 800 (Fernandez, J., dissenting). Because we find that next of kin have no recognized property right to the corpses of deceased relatives, there is no basis for a section 1983 action alleging a deprivation of a constitutional right.

<u>Perryman v. Cnty. of Los Angeles</u>, 153 Cal. App. 4th 1189 (2007) (emphasis in original), <u>review granted and opinion superseded on other grounds by</u> 171 P.3d 2 (Cal. 2007).[7] In light of conflicting California authority, this Court cannot say that <u>Newman</u> standing alone clearly established the law on relative's remains.

///

---

[7] The California Supreme Court granted review, and, under California appellate rules, the opinion was superseded. Following the disposition in <u>Conroy v. Regents of Univ. of Cal.</u>, 45 Cal. 4th 1244 (2009) (holding University owed no duty to family members of a decedent who donated his remains to dispose of the remains in a particular manner), the appeal was dismissed. 208 P.3d 622 (Cal. 2009).

In short, the relevant law was far from clear at the time of the exhumation. Therefore, the Court concludes that Plaintiffs' asserted constitutionally protected property interest was not "clearly established" such that a "reasonable officer" would have believed Plaintiffs were entitled to constitutional due process. Anderson v. Creighton, 486 U.S. 640–41.  Because "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," al-Kidd, 131 S. Ct. at 2085, Defendants' motion to dismiss Plaintiffs' Fourteenth Amendment due process claim against Sheriff Moore in his individual capacity is GRANTED without leave to amend.

**B.  Plaintiffs' § 1983 Monell Claims Against the County of San Joaquin**

Plaintiffs assert constitutional due process claims against Sheriff Moore in his official capacity and the County of San Joaquin under § 1983.  Defendants move to dismiss these claims under Rule 12(b)6), arguing Plaintiffs' complaint "fail[s] to allege that the defendants had an official policy or custom of mishandling human remains," and thus, "any Monell theory of liability must be dismissed."  (Mot. to Dismiss 19:16–19.) Plaintiffs oppose dismissal contending: "The customs at issue relate to the manner in which [Sheriff] Moore handled the exhumation and the more than six months that expired before plaintiffs were given only pieces of their relative." (Opp'n 6:9–11.) However, Plaintiffs fail to direct the Court to a specific portion of their Complaint alleging a custom by way of citation.  Moreover, Plaintiffs "seek leave to amend their complaint to include further information," if "these allegations are somehow insufficient to establish a claim against the County." (Id. at 6:11–13.)

"Section 1983 suits against local governments alleging constitutional rights violations by government officials cannot rely solely on respondeat superior liability." AE ex rel. Hernandez v. Cnty. of Tulare, 666 F.3d 631, 636 (9th Cir. 2012).

///

"Instead, plaintiffs must establish that 'the local government had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation they suffered.'" Id. (internal alteration omitted) (quoting Whitaker v. Garcetti, 486 F.3d 572, 581 (9th Cir. 2007)).  To survive a motion to dismiss, "a bare allegation that government officials' conduct conformed to some unidentified government policy or custom" is insufficient; instead, plaintiffs' complaint must include "factual allegations that . . . plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Id. at 637 (internal quotation marks omitted) (quoting Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011)).

Here, Plaintiffs' complaint is devoid of any allegation that their injuries were the result of a county policy, custom, or practice of mishandling human remains.  Therefore, this portion of Defendants' motion to dismiss is granted; however, Plaintiffs' request for leave to amend is also granted.

Therefore, Defendants' motion to dismiss Plaintiffs' § 1983 claims against Sheriff Moore in his official capacity and the County of San Joaquin is GRANTED with leave to amend.

**C. Plaintiffs' State Law Claims**

Plaintiffs assert various claims under California law for negligence and emotional distress.  Defendants move to dismiss these claims, arguing Plaintiffs have not alleged compliance with the California Tort Claims Act.  (Mot. to Dismiss 6:18–23.)  Plaintiffs do not respond to this argument in their opposition, as Defendants point out in reply.

The California Tort Claims Act is "an act waiving in some instances the sovereign immunities of certain public entities." Willis v. Reddin, 418 F.2d 702, 704 (9th Cir. 1969).
///
///

1 Thus, to state a claim for damages against a public entity or its employee under
2 California law, the plaintiff must first file a claim with that public entity under the California
3 Tort Claims Act, Cal. Gov't Code §§ 810 et seq.  "The timely filing of a claim is an
4 essential element of the cause of action against a public entity" or its employee.
5 Godfrey v. Ross, No. 2:11-cv-2308 WBS, 2011 WL 6012607, at *2 (E.D. Cal. Dec. 1,
6 2011) (citing State v. Superior Court, 32 Cal. 4th 1234, 1240–41 (2004); Willis, 418 F.2d
7 at 704).

Here, review of Plaintiffs' complaint reveals that Plaintiffs have not alleged compliance with the California Tort Claims Act.  Therefore, Defendants' motion to dismiss Plaintiffs' state law claims is GRANTED with leave to amend.

## CONCLUSION

Therefore, IT IS HEREBY ORDERED that,

1. Defendants' motion to dismiss Plaintiffs' § 1983 claims against Sheriff Moore individually (ECF No. 7) is GRANTED without leave to amend.

2. Defendants' motion to dismiss Plaintiffs' § 1983 claims against Sheriff Moore in his official capacity and the County of San Joaquin (ECF No. 7) is GRANTED with ;eave to amend.

3. Defendants' motion to dismiss Plaintiffs' state claims (ECF No. 7) is GRANTED with leave to amend.

IT IS SO ORDERED.

Dated:  June 27, 2013

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT