UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JOAN SHELLEY, MICHELLE LOFTIS, SANDRA HOYOPATUBBI,

Plaintiffs,

v.

COUNTY OF SAN JOAQUIN; SHERIFF STEVE MOORE, in his official capacity; and DOES 1 through 50, inclusive,

Defendants.[1]

No. 2:13-cv-00266-MCE-DAD

**MEMORANDUM AND ORDER**

Through this action, Plaintiffs Joan Shelley, Michelle Loftis and Sandra Hoyopatubbi (collectively "Plaintiffs") seek to recover damages from municipal defendants, the County of San Joaquin and San Joaquin County Sheriff Steve Moore (collectively "Defendants"), for violation of the U.S. Constitution. This case concerns the exhumation of the body of Plaintiffs' deceased relative, Jo Ann Hobson, by the San Joaquin County Sheriff's Department. Plaintiffs allege the Sheriff's Department exhumed Ms. Hobson's body in an unconstitutional manner, and sue, asserting violations of the Fourteenth Amendment under 42 U.S.C. § 1983. First Am. Compl. ("FAC"), Aug. 6, 2013, ECF No. 14.

[1] In a prior Order, the claims against Sheriff Moore in his individual capacity were dismissed. Mem. & Order, June 27, 2013, ECF No. 13.

Presently before the Court is Defendants' Motion to Dismiss ("Motion") Plaintiffs' First Amended Complaint ("FAC"), for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).[2] Mot. to Dismiss FAC, Aug. 27, 2013, ECF No. 15-2. Plaintiffs oppose the motion, Opp'n, Oct. 31, 2013, ECF No. 10, and Defendants have filed a reply, Reply, Nov. 27, 2013, ECF No. 23. The Court heard oral argument on Defendants' Motion to Dismiss on January 9, 2014: Mark Berry appeared for Defendants, and Mark Connely appeared for Plaintiffs. For the following reasons, Defendants' Motion is GRANTED in part and DENIED in part.

## BACKGROUND[3]

Jo Ann Hobson went missing at age fifteen in 1985, and it was suspected she was a murder victim of Loren Herzog and Wesley Shermantine, commonly referred to as the "Speed Freak Killers." In 2012, the San Joaquin Sheriff's Department received information from Shermantine that Hobson's body, along with the bodies of other victims, was located at the bottom of an abandoned well. The Sheriff's Department proceeded to the well site to exhume the bodies.

Plaintiffs allege Defendants "ordered the well to be rapidly and completely dug up with a back hoe." FAC ¶ 11, ECF No. 14. "Defendants ordered the digging with the back hoe to continue after bones were discovered." Id. "Thereafter, in the presence of Joan Shelley, and with invited television and news organizations observing, Defendants . . . caused the skeletal remains of Jo Ann Hobson . . . to be chewed up, pulverized, destroyed, crushed and commingled with other unknown murder victims . . . ." Id.

///

///

[2] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[3] The following recitation of facts is taken, sometimes verbatim, from Plaintiffs' First Amended Complaint, Aug. 6, 2013, ECF No. 14.

Moreover, Plaintiffs allege Defendants "held the skeletal remains of Jo Ann Hobson and would not release them to Plaintiffs for burial or disposition" until several months later, when "Defendants turned over the chopped up and purported remains of Jo Ann Hobson, by sending them to the mortuary for cremation." Id. ¶ 12.

"Out of concern that the remains . . . might not be those of her daughter, Plaintiff Joan Shelley" had the "remains photographed and evaluated by Erick Bartelink, Ph.D., professor of forensic anthropology at Chico State University." Id. Dr. Bartelink's review "revealed that at least three, and perhaps more individuals were contained in the body bag of bones Defendants had released for cremation. At least one of these bones [was] identified by DNA evidence as belonging to Kimberly Billy and not to Jo Ann Hobson." Id. "Further, the forensic evaluation . . . documented that not all of Jo Ann Hobson's remains [were] turned over," which leads Plaintiffs to "believe that within the remains that Defendant[s] passed off as belonging to Kimberly Billy, are the missing remains of [Plaintiffs'] daughter and sister Jo Ann Hobson." Id.

Plaintiffs allege that, as a result of Defendants actions, they suffered "extreme shock, horror, distress and permanent psychologic[al] injury and harm." Id. ¶ 11.

In a prior order, this Court granted Defendants' motion to dismiss Plaintiffs' damages claims against Sheriff Moore in his individual capacity with prejudice. This Court held Sheriff Moore was entitled to qualified immunity because Plaintiffs' asserted constitutionally protected property interest in the remains of their relative was not "'clearly established' such that a 'reasonable officer' would have believed Plaintiffs were entitled to constitutional due process." Mem. & Order 15:2–9, June 27, 2013, ECF No. 13. This Court also dismissed, with leave to amend, Plaintiffs' state law claims for failing to plead compliance with the California Tort Claims Act, and Plaintiffs' Monell claims against the County of San Joaquin and Sheriff Moore in his official capacity for failing to allege their injuries were the result of a policy, custom, or practice of mishandling human remains. Id. at 16–17.

///

Plaintiffs filed an amended complaint within the prescribed time in which they added allegations that Sheriff Moore was acting in his capacity as a policymaker. See FAC ¶ 14, ECF No. 14. Plaintiffs did not allege compliance with the California Tort Claims Act and therefore appear to have abandoned the state law claims for negligence and emotional distress.

## STANDARD

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the non-moving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant a fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (1997) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. Id. However, "a plaintiff's obligations to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations and internal quotation marks omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than a "statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

///

///

Furthermore, "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (citations and internal quotation marks omitted). "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Wright & Miller, supra, § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri–Plex Techs. v. Crest Grp., Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

///

///

**ANALYSIS**

Plaintiffs assert Defendants violated the Fourteenth Amendment of the U.S. Constitution and seek damages under 42 U.S.C. § 1983. Defendants move to dismiss arguing Plaintiffs fail to state a claim under Rule 12(b)(6). Plaintiffs counter, arguing Defendants violated the Fourteenth Amendment in two ways: (a) Defendants deprived Plaintiffs of their property interests in the remains of their relative without due process—a procedural due process claim; and (b) Defendants' conduct deprived Plaintiffs of their "substantive due process right to family integrity" because Defendants' conduct was "likely to cause the family profound grief" and thereby shock the conscience—a substantive due process claim.[4] These claims are analyzed in turn below in Parts A and B. In Part C, the Court addresses Defendants' motion to dismiss Plaintiffs' Monell claim.

**A. Procedural Due Process Claim**

Plaintiffs' Fourteenth Amendment "procedural due process claim has two elements: deprivation of a constitutionally protected liberty or property interest and denial of adequate procedural protection." Krainski v. Nev. Ex rel. Bd. of Regents of Nev. Sys. of Higher Educ., 616 F.3d 963, 970 (9th Cir. 2010) (citing Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir. 1998)). Defendants do not argue Plaintiffs were provided "adequate procedural protection"; therefore, the only issue is whether Plaintiffs were deprived of a constitutionally protected property interest in the remains of their relative.

[4] The Supreme Court has explained that two separate "kinds of § 1983 claims may be brought . . . under the Due Process Clause of the Fourteenth Amendment." Zinermon v. Burch, 494 U.S. 113, 125 (1990). First, "the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them,'" i.e., substantive due process claims. Id. Second, a "§ 1983 action may be brought for a violation of procedural due process," if the government deprives the plaintiff "of a constitutionally protected interest in 'life, liberty, or property . . . without due process of law,'" i.e., procedural due process claims. Id. (emphasis in original) (citation omitted).

"Property interests . . . are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972). "To have a property interest" for purposes of constitutional due process, "a person clearly must have more than an abstract need or desire," and "more than a unilateral expectation"; the interest must amount to a "legitimate claim of entitlement." Roth, 408 U.S. at 577. Thus, a federal court deciding whether a "claim of entitlement" constitutes a constitutionally protected "property interest" does "not craft substantive law regarding [a state's] property interests. Rather, it ma[kes] its best prediction as to what the [state's] Supreme Court would say about the matter, given the opportunity." Waeschle v. Dragovic, 687 F.3d 292, 295 (6th Cir. 2012).

In this case, Plaintiffs assert a legitimate claim of entitlement arises from California Health & Safety Code § 7102, which grants Plaintiffs "the right to control the disposition of the remains" of their deceased relative, Jo Ann Hobson. At oral argument, Plaintiffs' counsel confirmed § 7102 is Plaintiffs' sole asserted statutory basis of their procedural due process claim. Defendants counter "there is no property interest in a dead body in California," citing California cases such as Enos v. Snyder, 131 Cal. 68, 69 (1900); and Moore v. Regents of University of California, 51 Cal. 3d 120, 137 (1990).

In the anatomical gift context, the Ninth Circuit held that California parents have a due process property interest in the corneal tissue of their deceased children in Newman v. Sathyavaglswaran, 287 F.3d 786 (9th Cir. 2002). In so holding, the court in Newman relied on California's adoption of the Uniform Anatomical Gift Act, in which California "statutorily recognized other important rights of the parents in relation to the bodies of their deceased children—the right to transfer body parts and refuse to allow their transfer." 287 F.3d at 796 (citing Cal. Health & Safety Code § 7151.5). The court reasoned that these statutory rights "to control the disposition of the body recognized in [the] state's adoption of the" Uniform Anatomical Gift Act are "sufficient to create in next of kin a property interest in the corneas of their deceased relatives that could not be

taken without due process of law." Id. However, the court in Newman was careful to note it was not broadly recognizing a property right in all remains, reasoning, for example, that its holding in no way undermines the "California law governing the state's duty to conduct autopsies to determine the cause of death which may be performed contrary to the wishes of the individual or next of kin." Id. at 798 n.15. The narrow scope of the holding in Newman was recognized by the only district court to consider Newman: In Picon v. County of San Mateo, a district court concluded the Ninth Circuit's holding in Newman "cannot be extended to body parts other than corneas," because the basis of the Newman decision was the statute specifically pertaining to corneal tissue. No. C-08-766 SC, 2008 WL 2705576, at *3 (N.D. Cal. July 10, 2008).

In light of the narrow holding in Newman, this Court finds the instant case distinguishable from Newman in that Plaintiffs do not assert their claim of entitlement finds support in California's version of the Uniform Anatomical Gift Act, but arises from a different California statute, California Health & Safety Code § 7102. Thus, the Court must turn to California property law principles and persuasive authority to resolve Defendants' Motion.

California courts historically have been reluctant to hold that next of kin have a property interest in their relative's remains. For instance, at the turn of the century, the California Supreme Court surveyed English and American authorities and concluded: "It is quite well established . . . that, in the absence of statutory provisions, there is no property in a dead body . . . ." Enos v. Snyder, 131 Cal. 68, 69 (1900); accord Gray v. S. Pac. Co., 21 Cal. App. 2d 240, 246 (1937) ("[T]he law recognizes no right of property as such in the dead body of a human being."); O'Donnell v. Slack, 123 Cal. 285, 288 (1899) ("The body of one whose estate is in probate unquestionably forms no part of the property of that estate."); In re Wong Yung Quy, 2 F. 624, 631 (C.C.D. Cal. 1880) ("There is no property in any just sense in the dead body of a human being."); see also Moore v. Regents of Univ. of Cal., 51 Cal. 3d 120, 137 (1990) (declining to hold that human biological materials are the subject of "the general law of personal property").

In this regard, California law tracked the English common law. See, e.g., Regina v. Price, 12 Q.B. 247, 252–54 (1884) (Eng.) (holding "a dead body is not the subject of property"). More recently, California courts recognize "a quasi-property right to its possession . . . for the limited purpose of determining who shall have its custody for burial." Sinai Temple v. Kaplan, 54 Cal. App. 3d 1103, 1110 (1976). "The right is typically invoked in actions involving malfeasance by funeral homes," Benson v. Superior Court, 185 Cal. App. 4th 1179, 1190 (2010), to support a damages "action for tortious interference with a right to dispose of a decedent's remains." Sinai Temple, 54 Cal. App. 3d at 1112. Moreover, the California Supreme Court in Moore v. Regents of University of California declined to recognize a patient's property interest in his discarded tissue. 51 Cal. 3d 120, 136–38 (1990). The court in Moore explained that California "laws governing such things as human tissues . . . and dead bodies deal with human biological materials as objects sui generis, regulating their disposition to achieve policy goals rather than abandoning them to the general law of personal property." Id. at 137.

Although the parties cite to no binding authority on point, and the Court is aware of none, persuasive authority teaches that in the absence of a specific statutory grant of rights that give rise to a legitimate claim of entitlement—such as in the anatomical gift context—there is no property interest in the remains of loved ones. Enos, 131 Cal. at 69 ("in the absence of statutory provisions, there is no property in a dead body"). In a recent response to a certified question on this issue from the Fifth Circuit, the Texas Supreme Court so held in Evanston Ins. Co. v. Legacy of Life, Inc., 370 S.W.3d 377 (Tex. 2012), answering certified question from 645 F.3d 739 (5th Cir. 2011) ("Today, we reaffirm our holding in Burnett that tissues are quasi property of the next of kin but they are not the property of the next of kin.").

///

///

///

///

The same conclusion was reached by the supreme courts of:

- Colorado, Culpepper v. Pearl St. Bldg., Inc., 877 P.2d 877, 882 (Colo. 1994) ("Formally reject[ing] the fictional theory that a property right exists in a dead body that would support an action for conversion. Rather, an injury like that . . . is more properly addressed through a tort action related to the infliction of emotional distress or to mental anguish caused by willful, wanton, or insulting conduct, or through an action for breach of contract and accompanying mental suffering.");

- Ohio, Albrecht v. Treon, 617 F.3d 890, 898 (6th Cir. 2010) ("The Ohio Supreme Court explicitly delineated the lack of property rights in this case in Albrecht II. That Court held that next of kin have no right to autopsy specimens removed and retained by the coroner, in furtherance of a criminal investigation. [Plaintiffs] had no property interest in their son's brain, thus, they cannot support the first element of a due process clause claim. . . . Here, the Albrechts had no property rights on which the state could infringe." (citing Albrecht v. Treon, 889 N.E. 120 (Ohio 2008), answering certified question from No. 1:06-cv-274, 2007 WL 777864 (S.D. Ohio Mar. 12, 2007)));

- Michigan, Waeschle v. Dragovic, 687 F.3d 292, 295 (6th Cir. 2012) (per curiam) (Michigan) ("Under Michigan law, a next of kin does not have a property interest in a decedent's brain that was removed and retained pursuant to a lawful investigation." (citing In re Certified Question from U.S. District Court for E.D. Mich., 793 N.W.2d 560 (Mich. 2010) (per curiam)));

- Nevada, Boorman v. Nev. Mem'l Cremation Soc'y, 236 P.3d 4, 10 (Nev. 2010) ("Consistent with the majority of jurisdictions that have addressed this issue, we cannot conclude that there is a property right in a deceased human body or its remains."); and

- New York, Colavito v. N.Y. Organ Donor Network, Inc., 8 N.Y.3d 43, 52–53 (N.Y. 2006), answering certified question from 438 F.3d 214 (2d Cir. 2006) ("[C]ases in New York have continued to recognize causes of action for improper autopsy or mutilation, but none have strayed meaningfully from the doctrine that there is no common-law property right in a dead body. . . . For purposes of this case it is enough to say, in answer to the first part of the first certified question, that plaintiff, as a specified donee of an incompatible kidney, has no common-law right to the organ." (citations and footnote omitted)), among others that have considered the question.[5]

[5] Plaintiffs could not point to, nor is the Court aware of, any state supreme court finding a "property interest" in the remains of a relative for purposes of procedural due process.

This Court finds the Texas Supreme Court's recent decision particularly persuasive, since Texas—like California—recognizes "that next of kin have . . . quasi-property rights in the body of a deceased person . . . . to facilitate recovery for the negligent mishandling of a dead body," Evanston Ins. Co., 370 S.W.3d at 383–84, and Texas has also adopted the Uniform Anatomical Gift Act, which "grant[s] next of kin the right to make 'an anatomical gift of a decedent's body or part for the purpose of transplantation, therapy, research, or education,'" id. at 384 (quoting Tex. Health & Safety Code § 692A.009(a)); accord Cal. Health & Safety Code § 7150.40(a) (granting next of kin the right to make "an anatomical gift of a decedent's body or part for the purpose of transplantation, therapy, research, or education").

The Texas Supreme Court reached its conclusion in Evanston—that a decedent's remains are not property—by reasoning that, although the "common law gives [relatives] the right to direct burial" and "to sue for mental anguish damages," and the Uniform Anatomical Gift Act "also gives next of kin the right to gift tissues," these rights are carefully circumscribed:

> Despite these rights Alvarez has in her deceased mother's tissues, there are many rights Alvarez does not have. Some of the key rights that make up the bundle of property rights include the rights to possess, use, transfer, and exclude others. Next of kin have no right to possess a body other than for burial or final disposition. Next of kin have no right to use tissues unless they have been designated by the individual as a transplant recipient. Next of kin have no right to transfer tissues other than as set forth in the Anatomical Gift Act. And next of kin have no right to exclude, other than to seek damages in certain circumstances for acts done beyond their consent. In light of these limited rights, we cannot say that tissues have attained the status of property of the next of kin.

Id. at 385 (emphasis added) (footnote omitted). The court in Evanston also surveyed the case law across other jurisdictions and noted that its holding was not only "consistent with the majority view" that human remains "are, at most, quasi property of the next of kin," but also that the court was "unaware of any court holding" that human remains "are

///

the property of next of kin in the ordinary sense." Id. at 385 n.15 (emphasis added) (citing, among other cases, Moore, 51 Cal. 3d at 271).

Applying the Texas Supreme Court's reasoning from Evanston to this case, California similarly grants next of kin certain rights in the remains of their relative, but reserves a great deal of the rights incident to "property." See, e.g., Michael A. Heller, The Tragedy of the Anticommons: Property in the Transition from Marx to Markets, 111 HARV. L. REV. 621, 663 n.187 (1998) (listing among the common rights "incident" to property ownership "(1) the right to exclusive possession; (2) the right to personal use and enjoyment; (3) the right to manage use by others; (4) the right to the income from use by others; (5) the right to the capital value, including alienation, consumption, waste, or destruction; (6) the right to security (that is, immunity from expropriation); [and] (7) the power of transmissibility by gift, devise, or descent"). For example, as Plaintiffs point out, California Health & Safety Code § 7100(a) grants next of kin the "right to control the disposition of the remains of a deceased person." However, this limited right does not include many of the rights incident to property, such as the right to exclude, use, or transfer the body; instead California law only allows a relative to seek damages in certain circumstances. See, e.g., Sinai Temple, 54 Cal. App. 3d at 1112 (recognizing a cause of "action for tortious interference with a right to dispose of a decedent's remains"). For example, a relative has no right to prevent a coroner from "remov[ing] [organs] during [an] autopsy and . . . retain[ing]" them "to establish cause of death." Gray, 21 Cal. App. at 244–46. And next of kin have no right to possess a body other than for burial or final disposition. See Cal. Health & Safety Code § 7100(a) (granting only the "right to control the disposition of the remains of a deceased person, the location and conditions of interment, and arrangements for funeral goods and services"). In light of these carefully circumscribed rights, the Court finds that Plaintiffs do not have a legitimate claim of entitlement property interest sufficient to support a procedural due process claim.

///

///

Moreover, this conclusion is consistent with the decision of a federal district court within the Southern District of New York (affirmed by the Second Circuit in an unpublished opinion) that dismissed a similar procedural due process § 1983 claim concerning the remains of the victims of the September 11, World Trade Center disaster. WTC Families for a Proper Burial v. City of N.Y. (WTC Families), 567 F. Supp. 2d 529 (S.D.N.Y. 2008), aff'd, 359 F. App'x 177 (2d Cir. 2009).  The facts in WTC Families are similar to the facts of this case in that both cases concern remains outside the anatomical-gift context.  In WTC Families, the families of the victims of the terrorists attack of September 11, 2001, at Towers One and Two of the World Trade Center sued the municipality under Monell and § 1983, alleging "the City's failures [to adequately reclaim the remains of their loved ones from the rubble and debris] violate their Constitutional rights." Id. at 532.  In dismissing the victims' families' due process claims, the court recognized that the families held a "quasi-property right . . . in the remains of a deceased for the purposes of ensuring a proper disposal of the remains." Id. at 537.  However, the court reasoned "[t]he right is not property in the ordinary sense of the term; rather the right extends only so far as necessary . . . to protect[] from violation or invasion of the place of burial, and to protect the next of kin's right to ensure a proper burial." Id.  The plaintiffs' due process § 1983 claims were dismissed by the district court, and this decision was affirmed on appeal. Id.; see also Sabow v. United States, 93 F.3d 1445, 1449 & n.2, 1458 (9th Cir. 1996) (affirming dismissal of plaintiff's claim that the U.S. military mishandled the investigation of her husband's death, leaving his body "in the sun for more than seven hours," reasoning that, "[n]ot only is the handling of an individual's remains during an investigation into his death different from mortuary services, but, unlike the defendants in Christensen[v. Superior Court, 54 Cal. 3d 868 (1991)], the U.S. Navy was under no contractual obligation to treat decedent's remains in

///

///

///

a certain manner during the investigation."); cf. Benson v. Superior Court, 185 Cal. App. 4th 1179, 1190 (2010) ("There is no interference with [the quasi-property right of next of kin in her son's body for purposes of burial], however, when the coroner performs a lawful autopsy.").

In accordance with the majority of courts that have considered the question and California law, this Court holds Plaintiffs do not have a property interest in the remains of their relative cognizable as a procedural due process claim under the Fourteenth Amendment, and Defendants' Motion to Dismiss Plaintiffs' procedural due process claim is GRANTED without leave to amend.

**B. Substantive Due Process Claim**

Plaintiffs oppose Defendants' Motion to Dismiss their Fourteenth Amendment claim on another ground, in essence asserting Defendants violated Plaintiffs' substantive due process "right to privacy" by "depriving Plaintiffs of their family integrity . . . ." Opp'n 3, ECF No. 22. The Court construes Plaintiffs' Complaint and the argument contained in its opposition brief to assert a substantive due process claim.[6]

In Marsh v. County of San Diego, the Ninth Circuit recognized "a parent's right to control a deceased child's remains . . . [which] flows from the well-established substantive due process right to family integrity." 680 F.3d 1148, 1154 (9th Cir. 2012) (Kozinski, C.J.). The court held, "[m]utilation of a deceased family member's body, desecration of the burial site, and public display of death images are the kind of conduct that is likely to cause the family profound grief and therefore 'shocks the conscience,'" and thus, "violates . . . substantive due process right[s]" of the family members. Id. at 1155.

[6] At oral argument, Plaintiffs' counsel rolled arguments under Marsh and Newman together, asserting that Marsh merely recognized the longstanding property interest in relatives' remains; however, as discussed above, see supra note **Error! Bookmark not defined.**, Plaintiffs' claim based on family integrity is a "substantive due process" claim, which is separate from Plaintiffs' claim for deprivation of a property interest, which is better understood as a distinct "procedural due process" claim.

Here, Plaintiffs are the decedent's family members, Hobson's mother and sisters. Plaintiffs allege Defendants engaged in "large scale digging with back hoes or other major earth-moving equipment" and caused Hobson's "skeletal remains" "to be chewed up, pulverized, destroyed, crushed and commingled with other unknown murder victims" in the presence of the decedent's mother, Joan Shelley, and "with invited television and news organizations observing." FAC ¶¶ 9–11, ECF No. 14. Plaintiffs further allege that, as a result, they suffered "extreme shock, horror, distress and permanent psychologic[al] injury and harm." Id. ¶ 9. Accepting these allegations as true, as we must, and taking all reasonable inferences in favor of Plaintiffs, the Court finds that Defendants' conduct was "likely to cause the family profound grief and therefore 'shocks the conscience.'" Marsh, 680 F.3d at 1155.

Moreover, Defendants' argument that Plaintiffs' substantive due process claim fails because "[n]owhere in their First Amended Complaint . . . do the plaintiffs make any claim that they have been deprived of a 'right to privacy,'" Reply 2:6–9, ECF No. 23, is unavailing in light of the allegations contained therein. For example, in the First Amended Complaint, Plaintiffs allege "destruction of a victim's body . . . would be a violation of next of kins' substantive . . . due process rights, as guaranteed to them by the United States Constitution." FAC ¶ 9, ECF No. 14 (emphasis added). Further, Defendants' argument also misconstrues Plaintiffs' burden under Rule 8. A plaintiff need not plead a specific legal theory "so long as sufficient factual averments show that the claimant may be entitled to some relief." Fontana v. Haskin, 262 F.3d 871, 877 (9th Cir. 2001) ("All pleadings shall be construed as to do substantial justice," and "[n]o technical forms of pleading . . . are required." (citation omitted) (quoting Fed. R. Civ. P. 8(f), (e)(1)))).

Therefore, Plaintiffs state a claim for violation of their substantive due process rights, and this portion of Defendants' Motion to Dismiss is DENIED.

///

///

**C.     Monell Claim**

Defendants move to dismiss Plaintiffs' § 1983 claim against San Joaquin County and Sheriff Moore in his official capacity, arguing Plaintiffs "fail to plead sufficient facts to show a County policy or custom of mishandling human remains." Mot. to Dismiss FAC 9, ECF No. 15-2. Plaintiffs counter arguing in essence that Sheriff Moore was acting as "an official with 'final policy making authority,'" and was therefore a policymaker for purposes of Monell liability. Opp'n 11–14, ECF No. 22.

Under Monell, a municipality like San Joaquin County cannot be found liable for actions of its employees or officials under a respondeat superior theory, and is liable under § 1983 only if the constitutional injury was the result of a "custom, policy, or practice." However, a "single decision may satisfy Monell's municipal policy requirement" if that decision was "properly made by one of the municipality's authorized decisionmakers," i.e., "by an official who 'possesses final authority to establish a municipal policy with respect to the challenged action.'" Gobel v. Maricopa Cnty., 867 F.2d 1201, 1206–07 (9th Cir. 1989) (internal alteration omitted) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 479–81 (1986)).

Here, Plaintiffs allege that Defendants' employees, "based on a direct order . . . of the Sheriff . . . [,] ordered the well to be rapidly and completely dug up" in the manner alleged, as set forth above. FAC ¶ 11, ECF No. 14. Although the question whether Defendant Sheriff Moore had "final authority to establish a municipal policy with respect to the challenged action" and was exercising that authority is ultimately a matter of state law, Gobel, 867 F.2d at 1206–07, Defendants do not point to, nor is the Court aware of, any state or local statutes or ordinances that establish Defendant Moore was not acting in his capacity as an authorized decisionmaker for the municipality. Moreover, at oral argument, counsel for Defendants essentially conceded Sheriff Moore was a policymaker for purposes of Monell liability. Accordingly, Defendants do not meet their burden to establish dismissal is warranted, and Plaintiffs' substantive due process claim proceeds.

Additionally, under § 1983, the suit against Sheriff Moore in his official capacity is a suit against the entity he works for, the County of San Joaquin, and the suit against Sheriff Moore in his individual capacity was dismissed with prejudice by a prior order under qualified immunity. Thus, the Court concludes Sheriff Moore should be dismissed as a defendant as redundantly pled . See Hillblom v. Cnty. of Fresno, 539 F. Supp. 2d 1192, 1202 (E.D. Cal. 2008) ("[W]hen both an officer and the local government entity are named in a [§ 1983] lawsuit and the officer is named in official capacity only, the officer is a redundant defendant and may be dismissed.").

**CONCLUSION**

Therefore, IT IS HEREBY ORDERED that,

1. Defendant Sheriff Moore is DISMISSED as a defendant as redundantly pled.

2. Defendants' motion to dismiss Plaintiffs' procedural due process § 1983 claim against the County of San Joaquin, ECF No. 15, is GRANTED WITHOUT LEAVE TO AMEND.

3. Defendants' motion to dismiss Plaintiffs' substantive due process § 1983 claim, ECF No. 15, is DENIED.

4. Defendants' motion to dismiss Plaintiffs' § 1983 Monell claim, ECF No. 15, is DENIED.

IT IS SO ORDERED.

Dated: February 6, 2014

MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT