**HALL HIEATT & CONNELY**
1319 Marsh Street, Second Street
San Luis Obispo, California 93401
Telephone (805) 544-3830;Facsimile (805) 544-5329
MARK CONNELY, SBN 125693

**GERAGOS & GERAGOS,** A Professional Corporation
644 South Figueroa Street
Los Angeles, California 90017-3411
Telephone (213) 625-3900; Facsimile (213) 625-1600
MARK J. GERAGOS, SBN 108325
BENJAMIN J. MEISELAS, SBN 277412
SEAN E. MACIAS, SBN 201973
mark@geragos.com
sean@maciascounsel.com
Attorneys for Plaintiff

**MAYALL HURLEY, P.C.**
2453 Grand Canal Boulevard, 2nd Floor
Stockton, California 95207-8253
Telephone (209) 477-3833
MARK E. BERRY, SBN 155091
DERICK E. KONZ, SBN 286902
Attorneys for Defendant

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAN SHELLEY, MICHELLE LOFTIS, SANDRA HOYOPATUBBI, <br><br> Plaintiffs <br><br> vs. <br><br> COUNTY OF SAN JOAQUIN, AND DOES 1 THROUGH 100 INCLUSIVE, <br> Defendants. | ) Case No.:  2:13-cv-00266 MCE (DADx) <br> ) <br> ) **JOINT STATEMENT RE: DISCOVERY** <br> ) **DISAGREEMENT FOR MOTION TO** <br> ) **VACATE THE STIPULATED** <br> ) **PROTECTIVE ORDER OR IN THE** <br> ) **ALTERNATIVE TO MODIFY** <br> ) **STIPULATED PROTECTIVE ORDER.** <br> ) <br> ) Date:    April 17, 2015 <br> ) Time:    10:00 a.m. <br> ) Place:   Courtroom 27-8th Floor |

Pursuant to Local Rule 251, the parties submit the following Joint Statement of the parties regarding the above-referenced discovery dispute.

1. **PLAINTIFFS' POSITION**

    A. **SUMMARY OF ARGUMENT**

Plaintiffs incorporate by reference herein the Plaintiffs' Notice and Motion To Vacate the Stipulated Protective Order filed on March 9, 2015. Plaintiff Joan Shelley became aware that her daughter, JoAnn Hobson's, name was removed from the National Crime Information Center's Missing Person File (NCIC) by the San Joaquin County Sheriff's Office in contravention of protocol and law. California State Senator Cathleen Galgiani is the author of SB 1066, Chapter 437, Statutes of 2014, which amended several code sections regarding missing and unidentified persons, and created new law. This request to vacate or in the alternative to modify the Stipulated Protective order is to allow potential witnesses, Sen. Galgiani and her legislative staff access to information in this matter, as well as for the following reasons:

    1. To allow Plaintiffs to properly investigate their claims against Defendant;

    2. To allow potential witnesses and the public access to all information, including but not limited to, discovery responses, deposition transcripts and documents produced in this case;

    3. To allow California State Senator Cathleen Galgiani (Sen. Galgiani) and her legislative staff to better understand the process and procedure of local law enforcement agencies in the deletion of missing persons from the National Crime Information Center Missing Person File; and

    4. To allow Sen. Galgiani and her legislative staff to read and review certain claimed protected documents to assist in creating or advising regarding further legislation that rectifies deficiencies in reporting and canceling missing persons to both state and federal agencies.

There will be no harm to Defendant for such request to vacate or augment the Stipulated Protective Order since the health, welfare, and safety of the citizens of California outweigh any prejudice to the Defendant.  More telling, the request will assist with other families dealing with search and recovery of missing children and persons.

## B. **INTRODUCTION**

This is an action for an egregious violation of substantive due process regarding the parent's right to control a deceased child's remains.  A child at the age of sixteen, JoAnn Hobson went missing on August 28, 1985, and her mother, Joan Shelley, started the search for her daughter in 1985 that ended tragically.  The search for JoAnn Hobson ended in February 2012, when Ms. Shelley became aware that her daughter was found in a well, a victim of the Speed Freak Killers.  The convicted Speed Freak Killers are Wesley Shermantine and Loren Herzog.

The crime of taking and ultimately harming a child is an unimaginable act, but the removal of JoAnn Hobson's name from the National Crime Information Center (NCIC) Missing Person File by the San Joaquin County Sheriff's Office for no valid reason, and without following protocol, is simply unbearable.  The removal of a name from the NCIC Missing Person File prevents the search and recovery of those individuals.

At all times, Plaintiff Shelley believed her child, JoAnn Hobson, was a missing person, and that all critical information regarding her child was indexed with the National Crime Information Center (NCIC) Missing Person File to allow local and federal law enforcement to communicate to each other.  The NCIC is a computerized index for access to state and federal law enforcement and other justice agencies.  The information is critical to such local and federal agencies in both the location of fugitives and missing persons, and such information is protected by encrypting safeguards and other safety protocols.  The NCIC is operated by the Federal Bureau of Investigation (FBI) and the FBI acquires,

collects, classifies, preserves and exchanges such information with authorized agencies.

The Public Record Request of November 5, 2014, evidences that the San Joaquin County Sheriff's Office removed missing persons from NCIC Missing Person File on or about September 10, 2010, including JoAnn Hobson's name. (Declaration. of Sen. Galgiani ¶9 Ex. 2.)

## C. **MEET AND CONFER**

This Motion is made following the conference of counsel pursuant to Local Rule 251 which took place on January 7, 2015 after Plaintiffs' counsel exchanged with Defendant's counsel, Plaintiffs' position in augmenting and later vacating the stipulated protective order.  The parties were unable to reach agreement on the issues raised in Plaintiffs' Motion.  (Declaration of Mark Connely ¶2-3, See Exhibit 1).

## D. **PLAINTIFFS' STATEMENT OF FACTS**

The convicted Speed Freak Killers are Wesley Shermantine, Jr. (hereinafter referred to as "Shermantine") and Loren Joseph Herzog (hereinafter referred to as "Herzog").  California Investigators believe this lethal pair may have killed as many as twenty (20) or more people and disposed the victims' bodies in mine shafts, remote hillsides, and buried some victims underneath a trailer park in the San Joaquin Valley, California.  They received the "Speed Freak" moniker due to their methamphetamine abuse.  Shermantine is on death row in San Quentin Correctional Facility, and Herzog's conviction was overturned in 2004, he was paroled in 2010 and committed suicide in 2012 while on parole.

In or about 2010, Plaintiff Joan Shelley asked for the assistance from then Assemblywoman Cathleen Galgiani regarding her daughter, JoAnn Hobson's disappearance.  Thereafter, on or about September 2010, Shermantine, through his sister, Barbara Jackson, stated that there were more unrecovered victims on Flood Road.  On or about September 7, 2010, this critical information was provided to

Sheriff Steve Moore of the San Joaquin Sheriff's Office by Sen. Galgiani. (Declaration. of Sen. Galgiani ¶4.)

Unbeknownst to Joan Shelley or to then Assemblywoman Galgiani, an employee of the San Joaquin County Sheriff's Office removed from the State and Federal database the name of JoAnn Hobson, and an undetermined number of additional victims **a mere three (3) days** after Sen. Galgiani provided the letter from Shermantine to San Joaquin County Sheriff's Office.  In effect, victims were removed from the state and federal missing persons systems, making their identification impossible, and thwarting any further investigation affecting those Missing Persons' cases. (Declaration. of Sen. Galgiani ¶8.)

According to a Public Records Request (PRR) from Sen. Galgiani to the State of California Department of Justice-Office of the Attorney General Kamala Harris the following information was requested:

1.     Any and all documents concerning requests by San Joaquin County and/or the San Joaquin Sheriff's Office for Cancellation of Missing Persons Records in or around 9/10/2010, to the present.

2.     Violent Crime Information Center submitted documents, whether digital or written correspondence, e-mails, notes, and reports, between any unit to include, but not be limited to, the Violent Crime Information Center, The Missing and Unidentified Persons Unit, the California Department of Justice Bureau of Forensic Services and San Joaquin County Sheriff Steve Moore, including any person working at the San Joaquin County Sheriff's Department from September 1, 2010 to the Present regarding any case closing, deletion, removal, unlisting, or any change to remove information, (including February, 2012), concerning any missing persons to include but not limited to the following individual missing persons from San Joaquin County from the year 1980 to 1999:

Cyndi Vanderheiden
Tracy Dianne Melton
JoAnn Hobson
Kimberly Ann Billy
Phillip Lloyd Cabot Martin

Gina Garcia
Jose Guadalupe Cortes/Cortez
Silvia Dittus
Jose Luis Felix Fragosa
Pastor Martinez
Benjamin Lopez, Jr.
Steven Mark Dadasovich
Jose Esauro Dominguez
James Kenneth Patterson
Edward Louis Winans
(Decl. of Sen. Galgiani ¶9, Ex. 2)

In response to such request the Office of Attorney General provided two email communications between San Joaquin Deputy Sheriff Chanda Bassett and State of California Department of Justice employee Kaycee Leonard which clearly articulates that on September 10, 2010, the San Joaquin County Sheriff's Office requested that several cold cases and older cases be removed.  (Decl. of Galgiani ¶10, Ex.3).

The protocol is simple: that all missing persons files should be kept active until the entire body is recovered. The information contained in the NCIC system is protected administrative and encrypted data to safeguard such valuable information. The way that the NCIC missing persons database is maintained is a significant public interest. (Declaration of Allen Fox ¶4).

More telling, law enforcement officers and related agencies must follow a required process in order to remove missing persons from the NCIC.  This affords law enforcement and related agencies with oversight to ensure that missing persons are not removed from the NCIC without recovery of that missing person.

Specifically, in order for personnel to remove or modify an entry in the NCIC missing persons list, a law enforcement officer must instruct the person responsible for modifying the database at the reporting agency (the "ORI") to remove or modify the entry.  Failure to follow the rules and guidelines could result in de-certification of a particular ORI. (Decl. of Fox ¶6).

In March 2012, the Reno Police Department was investigating the missing person case of Terri Ann Fourcher, who was last seen in Reno, Nevada on August 10, 1996.  At one point, the investigation regarding the missing person, Ms. Fourcher led to the possibility that she may have been a victim of the Speed Freak Killers.  The San Joaquin County Sheriff's Office was uncooperative and not forthcoming regarding the Speed Freak Killers case, and denied information and access to the Reno Police Detective Allan Fox. (Decl. of Fox ¶9).

In 2012, another law enforcement agency, the City of Hayward Police Department sought assistance with locating the recovery of a missing child allegedly abducted and killed by the Speed Freak Killers.  One of the key investigators for the San Joaquin Sheriff's Office, Det. Bassett, abjectly failed to cooperate with the Hayward Police Department's investigation and stonewalled its efforts. (Declaration of Kevin Atkins ¶¶9,10).

## 2.   PLAINTIFFS' ARGUMENT

### A.   VACATING OR MODIFYING THE PROTECTIVE ORDER IS PROPER IN LIGHT OF THE GOOD CAUSE SHOWN HEREIN

In this matter, *good cause* exists for vacating or at least modifying the Stipulated Protective Order.  Courts have allowed modification simply for "good cause shown." *Pansy v. Borough of Stroudsburg*, 23 F.3d772, 789-790 (3rd Cir. 1994).  In determining whether "good cause" exists for vacating or modifying a protective order, the court considers factors such as: the extent of reliance on the order, the public and private interests affected by the order, any new information bearing on the order, and the burden the order creates. *Id.* at 790; *see also Intel Corp. v. VIA Technologies, Inc.*, 198 F.R.D. 525, 528 (N.D. Cal. 2000) (holding that a court will allow modification of a protective order if the party requesting the modification can demonstrate how the protective order will prejudice the party's case).

Here, good cause justifies vacating or in the alternative modifying the protective order because there is no current criminal investigation regarding JoAnn Hobson's death, evidence in this matter addresses significant public interest regarding the maintenance and removal of missing persons entries from the NCIC Missing Person File, and the protocol and process and the necessity for accurate records to properly identify recovered bodies.

Moreover, Plaintiff Shelly's daughter's name and other material information were removed from the NCIC Missing Person File within days *after* Sen. Galgiani provided the San Joaquin County Sheriff's Office with information regarding the location of Ms. Hobson's remains.  It is clear from the communication between the California State Department of Justice and the San Joaquin Sheriff's Office that the removal of Ms. Hobson's name from the NCIC was requested by the San Joaquin Sheriff's Office and the California State Department of Justice advised against such action.  (Decl. of Galgiani ¶8, Ex.3.)  The Ninth Circuit strongly favors modification of a protective order to meet the reasonable needs of the parties in pending litigation.  *Beckman Industries v. International Insurance Co.*, 966 F.2d 470, 475 (9th Cir. 1992).  It is Plaintiffs' contention that Ms. Hobson's name was cancelled or removed prior to her recovery in 2012.

Plaintiffs seek to vacate or in the alternative to modify the order for the following: (1) To allow witnesses and the public access to all information including but not limited to discovery responses, deposition transcripts and documents produced in this case since there is no ongoing criminal investigation regarding JoAnn Hobson, and (2) To allow California State Senator Cathleen Galgiani and her legislative staff to understand the process and procedure of local law enforcement agencies in the removal of missing persons from the NCIC.

Simply put, preventing Plaintiffs from doing so will greatly prejudice them because Plaintiffs need to reveal to third parties the contents of the depositions and documents in order to properly investigate their claims against Defendant.

Currently, Plaintiffs are limited in their ability to obtain information as to the customary practice of the San Joaquin Sheriff Office in determining when to remove the name of missing persons from the NCIC Missing Persons File.

Particularly, Plaintiffs would like to obtain information about the customary practice to determine whether concealing critical evidence of missing persons is customary, especially in light of the fact that Plaintiffs' daughter, JoAnn Hobson, was removed from NCIC Missing Person Index prior to her recovery.

Furthermore, since DNA evidence was destroyed in accordance with CA Penal Code §14250, when missing persons are taken off the State and Federal missing person's list, it is in the public's interest to allow Sen. Galgiani access to the depositions in order to advance the process by which law enforcement agencies remove the names of missing persons from lists such as the NCIC and the cooperation between state and federal agencies. (*See Association of Irritated Residents v. San Joaquin Valley Unified Air Pollution Control Dist.*, (2008) 168 Cal. App. 4th 535, 546.)

The public has a right to information about missing persons and has a right to know whether people in positions of power are carelessly or intentionally removing such information from the archives. (*See In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 427- 428 (9th Cir. 2011) (finding that the public has a weighty interest in public safety, in identifying abusers, particularly those occupying positions of power and trust). Thus, such request is reasonable in the context of this case.

In providing access to information from this case to Sen. Galgiani and her legislative staff, they could analyze the current issue of deletion of missing persons from the NCIC Missing Person File, and can assist, advise, or create further legislation that rectifies deficiencies in reporting and removal of missing persons to both state and federal databases and the NCIC Missing Person File. The County of San Joaquin should be applauding this request not objecting to it.

## B. PLAINTIFFS' CONTENTION IN THE ALTERNATIVE THE COURT SHOULD EXERCISE ITS DISCRETION AND MODIFY THE PROTECTIVE ORDER

Although Federal *Rule of Civil Procedure* Rule 26(c) does not refer to modification of a protective order, case law recognizes that a protective order may be modified for good cause. *Osband v. Woodford*, 290 F.2d 1036, 1039 (9th Cir. 2002) (holding that a party subject to a protective order is generally free to return to the issuing court to seek a modification of the order). This includes protective orders arising from a stipulation by the parties. *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990). Here, good cause exists at least for the modification of the protective order to allow Sen. Galgiani and her legislative staff access, in order for them create further legislation that rectifies deficiencies in reporting and removal of missing persons.


## 3. PLAINTIFFS' CONCLUSION.

For the foregoing reasons, Plaintiffs respectfully request that this Court GRANT Plaintiffs' Motion to Vacate or in the Alternative to Modify the Stipulated Protective Order.


Dated: April 8, 2015                     **HALL HIEATT & CONNELY**
                                         **GERAGOS & GERAGOS**


                                         By: /s/ Mark Geragos
                                         Mark J. Geragos, Esq.
                                         Attorneys for Plaintiffs

Pursuant to Local Rule 251(c), the COUNTY OF SAN JOAQUIN ("COUNTY") hereby submits their portion of the joint statement regarding the Plaintiffs' motion to vacate the stipulated protective order, or in the alternative, to modify the stipulated protective order.

## DEFENDANT COUNTY OF SAN JOAQUIN'S POSITION

## 1.    DETAILS OF THE CONFERENCE

On January 7, 2015, Mark E. Berry, counsel for the COUNTY, spoke with the Plaintiffs' attorney, Mark Connely, who expressed a desire to vacate the current protective order (ECF No. 38) entered by this court on September 24, 2014. (Declaration of Mark E. Berry ("Berry Dec.").)  Mr. Berry advised that he would not stipulate to vacating or modifying the protective order because the COUNTY is still conducting an on-going criminal investigation into Hobson's murder and Wesley Shermantine still has a pending criminal appeal.  (Berry Dec.)

On January 12, 2015, Mr. Berry received correspondence from Mark Connely, again requesting that Mr. Berry stipulate to vacate or modify the current protective order so that Mr. Connely could provide discovery documents to Senator Galgiani.  (Berry Dec.)

On January 29, 2015, Mr. Berry informed Mr. Connely that his position had not changed and that he would not stipulate to vacate or modify the protective order due to the on-going criminal investigation and Wesley Shermantine's pending criminal appeal.  (Berry Dec.)  Mr. Berry further contended that the NCIC database issue had no relevance to this case and that modifying the protective order to allow Senator Galgiani to investigate the NCIC issue was an inappropriate use of discovery.

2.   **NATURE OF THE ACTION AND FACTUAL DISPUTES**

    A.   **THIS IS A CASE ABOUT WHETHER THE COUNTY'S METHOD OF RECOVERING JO ANN HOBSON'S HUMAN REMAINS FROM A DEEP WELL IN 2012 WAS A SUBSTANTIVE DUE PROCESS VIOLATION.**

    The sole cause of action in this case is a <u>Monell</u> claim against the COUNTY for violation of the Plaintiffs' substantive due process rights under <u>42 U.S.C. 1983</u>. (ECF No. 14.)  The following facts are taken from the Plaintiffs' operative complaint, ECF No. 14.

    In 1985, Jo Ann Hobson ("Hobson"), then fifteen (15) years old, became missing.  (ECF No. 14, 2:12-13.)  In or around 2011, Wesley Shermantine revealed where his "Speed Freak Killer" accomplice, Loren Herzog, may have buried Hobson.  (ECF No. 14, 2:24-27.)  Shermantine never stated that he had killed or been involved in the killing of Hobson.  (ECF No. 14, 2:23-24.)

    On or about February 11, 2012, the COUNTY Sheriff commenced to dig down in a well where Shermantine reported that Hobson's body was buried.  (ECF No. 14, 3:7-10.)

    The Plaintiffs' allegation is that the COUNTY engaged in "large scale digging with back hoes or other major earth-moving equipment" which caused the "skeletal remains" of Hobson "to be chewed up, pulverized, destroyed, crushed and commingled with other unknown murder victims" in the presence of her mother and "with invited television and news organizations observing."  (ECF No. 14, 4:6-27.)

    The Plaintiffs allege that, as a result, they suffered "extreme shock, horror, distress and permanent psychologic [al] injury and harm," in violation of their substantive due process rights.  (ECF No. 14, 4:26-27.)

    In the court's order on the COUNTY's motion to dismiss, the issue in this case has been very narrowly framed,

"Here, Plaintiffs are the decedent's family members, Hobson's mother and sisters.  Plaintiffs allege Defendants engaged in 'large scale digging with back hoes or other major earth-moving equipment' and caused Hobson's 'skeletal remains' 'to be chewed up, pulverized, destroyed, crushed and commingled with other unknown murder victims' in the presence of the decedent's mother, Joan Shelley, and 'with invited television and news organizations observing.' FAC ¶¶ 9–11, ECF No. 14. Plaintiffs further allege that, as a result, they suffered 'extreme shock, horror, distress and permanent psychologic[al] injury and harm.' Id. ¶ 9. Accepting these allegations as true, as we must, and taking all reasonable inferences in favor of Plaintiffs, the Court finds that Defendants' conduct was 'likely to cause the family profound grief and therefore 'shocks the conscience.'' Marsh, 680 F.3d at 1155."  (ECF No. 32, 14:11-15:26.)

The operative complaint contains no allegations regarding the COUNTY's "removal" of Hobson's name from the National Crime Information Center (NCIC) Missing Person File in 2010.  (ECF No. 14.)

**B.     THE COUNTY HAS ALREADY PRODUCED SENSITIVE DOCUMENTS INVOLVING THEIR OPEN AND ONGOING CRIMINAL INVESTIGATION INTO HOBSON'S DEATH, IN RELIANCE ON THE PROTECTIVE ORDER.**

On May 15, 2014, June 24, 2014 and August 7, 2014, the COUNTY produced well over two thousand pages of discovery documents in response to the Plaintiffs' production requests.  (Berry Dec.)

Included in these documents were numerous inter-office memoranda between COUNTY investigators regarding the recovery of Hobson's remains, investigative reports regarding Hobson's disappearance, and communication regarding the criminal investigation of Wesley Shermantine and Loren Herzog. (Berry Dec.)

These documents were produced in reliance on a verbal agreement between the parties that the documents would not be disclosed to any person outside of the

litigation because the documents involved an open and ongoing criminal investigation and because Wesley Shermantine had a pending criminal appeal. (Berry Dec.)

To memorialize this agreement, on September 11, 2014, the parties entered into a stipulated protective order that all discovery previously produced and produced in the future,

> "shall not be duplicated, reproduced, transmitted, or communicated to any person or entity for any reason whatsoever excepting plaintiff's counsel; plaintiffs; declared experts pursuant to the plaintiffs' Rule 26 disclosure; deposition witnesses at the time of deposition; trial witnesses at the time of trial; mediator or third party neutral; or the court." (ECF No. 38.)

This agreement was made with the understanding that,

> "the documents produced by the defendant involve an open and ongoing criminal investigation and that the suspect in the murders described in the documents were all or in part at the hand of Wesley Shermantine. Shermantine is currently housed on Death Row at San Quentin State Prison, San Quentin, California. It is understood that Shermantine has an appeal(s) of his criminal conviction pending and that the release of the produced documents may negatively interfere with Shermantine's appeal process or negatively interfere with the continuing investigative efforts of the San Joaquin County Sheriff's Office or other law enforcement agency(s)." (ECF No. 38.)

On September 24, 2014, the court entered an order that all parties comply with the terms of the protective order. (ECF No. 38.)

///
///
///
///
///

### C.   THE PLAINTIFFS FILED A MOTION TO VACATE/MODIFY THE PROTECTIVE ORDER TO ALLOW SENATOR GALGIANI AND THE PUBLIC ACCESS TO DISCOVERY THAT THE COUNTY HAS ALREADY PRODUCED.

The Plaintiffs now seek to vacate/modify this protective order to allow Senator Galgiani, her legislative staff, potential witnesses and the public access to, "including but not limited to, discovery responses, deposition transcripts and documents produced in this case." (ECF No. 44, 6:4-24.)  The Plaintiffs contend that this is necessary for them to properly investigate their claims and for Cathleen Galgiani to better understand the NCIC process and procedure.  (ECF No. 44, 6:13-24.)

The COUNTY will not stipulate to modify or vacate the protective order because the COUNYT is still conducting an ongoing criminal investigation into Hobson's murder, and because Wesley Shermantine still has a criminal appeal pending in another matter that could be compromised by dissemination of the COUNTY's investigatory material. See ECF No. 30, Declaration of Chanda Bassett.

Further, the COUNTY has relied upon the protective order in producing documents thus far and fails to see how now disseminating these sensitive documents to Senator Galgiani and the public helps the Plaintiffs litigate a case alleging the improper use of a backhoe and commingling human remains.

For the reasons set forth below, the COUNTY respectfully requests that the court deny this motion and keep the current protective order in place.

///
///
///
///
///

**3.** **DEFENDANT COUNTY OF SAN JOAQUIN'S CONTENTIONS**

    **A.** **THE PLAINTIFFS APPEAR TO HAVE ALREADY VIOLATED THE PROTECTIVE ORDER BY DISSEMINATING DISCOVERY TO SENATOR GALGIANI.**

As alarming as it is that the Plaintiffs now seek to share the COUNTY's sensitive documents with "the public" (ECF No. 44, 2:14-16) after they stipulated to a protective order, there is something even more alarming.

It appears that the Plaintiffs have already violated the protective order by disseminating document to Galgiani!

The Defendant rhetorically asks, how, in 2014, did Senator Galgiani, "became aware that . . . someone at the San Joaquin County Sheriff's Office cancelled from the State and Federal Criminal database the information for missing victims of JoAnn Hobson, and an undetermined number of additional victims . . ."? (ECF No. 44, Declaration of Cathleen Galgiani at ¶ 8.)  The only way that this information could have been disseminated was to discuss the documents produced by the Defendant and deposition testimony about the documents with Senator Galgiani!

Federal courts may access attorney fees as a sanction for "willful disobedience of a court order."  Chambers v. Nasco, Inc. (1991) 501 U.S. 32, 44-45.

    **B.** **THE COUNTY OF SAN JOAQUIN RELIED ON THIS PROTECTIVE ORDER WHEN PRODUCING SENSITIVE DOCUMENTS REGARDING THEIR ONGOING CRIMINAL INVESTIGATION INTO HOBSON'S MURDER AND SHERMANTINE'S PENDING CRIMINAL APPEAL.**

Reliance is an important factor in determining whether a protective order should be modified.  Beckman Indus., Inc. v. Int'l Ins. Co. (9th Cir. 1992) 966 F.2d 470, 475.  "[A] party which in good faith negotiates a stipulated protective order and then proceeds to produce documents pursuant to that protective order is

entitled to the benefit of its bargain; namely, to rely upon the terms of the stipulated protective order." <u>Jochims v. Isuzu Motors, Ltd.</u> (S.D. Iowa 1992) 145 F.R.D. 499, 502.

It is undisputed that in or around 2011, Wesley Shermantine revealed where his "Speed Freak Killer" accomplice, Loren Herzog, may have buried Hobson. (ECF No. 14, 2:24-27.)   However, it is also undisputed that Shermantine never stated that he had killed or been involved in the killing of Hobson. (ECF No. 14, 2:23-24.) As such, the COUNTY's criminal investigation into Hobson's murder is still open.

Reluctantly, after this lawsuit was filed, the COUNTY produced sensitive discovery regarding Hobson's murder that would normally remain confidential. To ease concerns about compromising the investigation, a stipulated protective order was signed and entered by the Court.  (ECF No. 38.)  This protective order served to appease both sides; it facilitated discovery to help the Plaintiffs litigate their civil claim, and allowed the COUNTY to maintain a confidential criminal investigatory file.  It also helped to prevent a compromise of Wesley Shermantine's pending criminal appeal in another matter.

It is assumed that the Plaintiffs understood this at the time they signed the protective order which clearly outlined the COUNTY's legitimate concerns ("the documents produced by the defendant involve an open and ongoing criminal investigation . . . It is understood that Shermantine has an appeal(s) of his criminal conviction pending and that the release of the produced documents may negatively interfere with Shermantine's appeal process or negatively interfere with the continuing investigative efforts of the San Joaquin County Sheriff's Office or other law enforcement agency(s).").  (ECF No. 38.)

In reliance on this agreement, the COUNTY produced, among other information, numerous communications (both intra-office and with outside law

enforcement agencies), photographs, and reports regarding the disappearance of Hobson, the condition of her body and items of evidence found with her body.

The COUNTY would not have disclosed so much information without a protective order.  It would be manifestly unjust to now pull the rug out from under the COUNTY by vacating or modifying the protective order upon which they so greatly relied.  The Plaintiffs motion should be denied.

### C.   THE PLAINTIFFS HAVE FAILED TO SHOW HOW THE PROTECTIVE ORDER PREJUDICES THEIR ABILITY TO LITIGATE THIS CASE; ACCORDINGLY, GOOD CAUSE TO VACATE OR MODIFY THE PROTECTIVE ORDER HAS NOT BEEN ESTABLISHED.

To modify a protective order a party must establish good cause by demonstrating how the protective order **will prejudice the party's case**.  Intel Corp. v. VIA Techs., Inc. (N.D. Cal. 2000) 198 F.R.D. 525, 528; Brown Bag Software v. Symantec Corp. (9th Cir. 1992) 960 F.2d 1465, 1470-1472 (motion to modify protective order was denied because the moving party "failed to demonstrate how the protective order actually could have or did prejudice its case.")

Once the protective order has been entered, a party seeking to modify the protective order carries the initial burden of establishing "good cause" by showing how the protective order in its current form prejudices its ability to litigate its case. CytoSport, Inc. v. Vital Pharmaceuticals, Inc. (E.D. Cal. May 10, 2010) 2010 U.S. Dist. LEXIS 45602, at *6; Gerawan Farming, Inc. v. Prima Bella Produce, Inc. (E.D. Cal. June 22, 2011) 2011 U.S. Dist. LEXIS 66407, at *4-5.

Here, the Plaintiffs have made no such "good cause" showing.  They have failed to present any evidence of how the protective order prejudices their case. They have failed to state how allowing Senator Galgiani, her legislative staff and the public, access to all discovery, would "allow [them] to properly investigate

their claims against Defendant." (ECF No. 44, 4:13.) They fail to present such a showing because they cannot.

This is a case about whether the COUNTY's method of recovering Hobson's remains from a deep well in February 2012, was a substantive due process violation. The court has already framed this issue very narrowly in its previous order on the Defendant's motion to dismiss. (ECF No. 32, 14:11-15:26.)

The Plaintiffs, in this motion, frame the issue in this case as follows: "This is an action for an egregious violation of substantive due process regarding the parent's right to control a deceased child's remains." (ECF No. 44, 7:2-3.)

This is not a case about how "the San Joaquin County Sheriff's Office removed missing persons from the NCIC Missing Person File on or about September 10, 2010, including Jo Ann Hobson's name." (ECF No. 44, 8:1-3.) That is completely irrelevant. The Plaintiffs operative complaint contains no allegations or reference to the NCIC or anything remotely related to the NCIC or a missing persons database. (ECF No. 14.)

The alleged "removal" of missing persons from the NCIC database in 2010 is not an issue in this case. Even if it were, the Plaintiffs have submitted no evidence or argument showing how sharing sensitive documents with Ms. Galgiani and the public is necessary to litigate the issue.

The bottom line is that there is no connection between the alleged "removal" of missing persons from the NCIC database in 2010 and the Plaintiffs' due process claim arising out of 2012 events. This disconnect makes the Plaintiffs' argument, that disseminating discovery to Ms. Galgiani and the public is necessary to properly investigate their claims, specious. Further even if the working of the NCIC database was an issue this case, the Plaintiffs have made no showing of how sharing sensitive documents with Ms. Galgiani and the public is necessary to litigate the issue.

The Plaintiffs have made no showing as to how the protective order prejudices their case.  Accordingly, no good cause has been established.

The Plaintiffs' motion to vacate the protective order should be denied.

**D.   DUE TO THE ONGOING CRIMINAL INVESTIGATION AND PENDING CRIMINAL APPEAL, GOOD CAUSE FOR A PROTECTIVE ORDER HAS ALREADY BEEN ESTABLISHED; THESE CIRCUMSTANCES HAVE NOT CHANGED.**

The protective order was entered into because "the documents produced by the defendant **involve an open and ongoing criminal investigation**", "Shermantine has an appeal(s) of his criminal conviction pending", and "release of the produced documents may negatively interfere with Shermantine's appeal process or negatively interfere with the continuing investigative efforts of the San Joaquin County Sheriff's Office or other law enforcement agency(s)."  (ECF No. 38.)

The parties stipulated to this and the court entered it. (ECF No. 38.)  As a result, good cause for the protective order has already been established.

"It is doubtful that any judge would approve a [stipulated] protective order not demonstrably rooted in Rule 26(c), both as a matter of judicial integrity and out of concern for potential public access rights." Zenith Radio Corp. v Matsushita Electric Industrial Co. (ED Pa, 1981) 529 F Supp 866, 889, fn. 40.

Additionally, the circumstances regarding the COUNTY's ongoing criminal investigation and Shermantine's pending criminal appeal have not changed since the order was entered.

There is still an open and ongoing criminal investigation into Shermantine's involvement in Hobson's disappearance.  See ECF No. 30, Declaration of Chanda Bassett.  Until the COUNTY receives a confession from Shermantine that he was involved, or some exonerating evidence, the criminal investigation against him will remain open.  The documents produced thus far by the COUNTY directly relate to

this ongoing criminal investigation and Shermantine's pending criminal appeal in another matter.  See ECF No. 30, Declaration of Chanda Bassett.

As such, no changed circumstances warrant modifying the protective order. Good cause exists for keeping the protective order in place.

The Plaintiffs' motion should be denied.

**E.**  **"CATHLEEN GALGIANI FOR SENATE 2016"; THE PLAINTIFFS' MOTION IS NOTHING MORE THAN AN ATTEMPT BY CATHLEEN GALGIANI TO IMPERMISSIBLY USE THE COURT TO FURTHER HER OWN POLITICAL AGENDA.**

The Plaintiffs' motion has nothing to do with allowing them to "properly investigate their claims against Defendant." (ECF No. 44, 4:13.)  In fact, they present absolutely no evidence showing how allowing Ms. Galgiani access to the discovery in this case will help them investigate their claims.

Rather, this motion is nothing more than part of Senator Galgiani's 2016 California Senate political campaign.

The court needs to look no further than her March 9, 2015, press release (**Exhibit A** to Berry Dec.) and the campaign email sent out by Ms. Galgiani one (1) day after the motion was filed.  (**Exhibit B** to Berry Dec.)

The campaign email was sent out to various voters in Ms. Galgiani's District, explaining how a motion was filed in Federal Court to allow *her* access to sealed documents in this case because, "As the chair of the Senate Select Committee on Missing and Unidentified Persons, I am determined to find out the truth behind the deleted missing persons records."

Most telling, is the last line of the email,

"***Paid for by Galgiani for Senate 2016***"

(**Exhibit B** to Declaration of Mark E. Berry.)

The clear motive behind the Plaintiffs' motion to vacate the protective order directly violates the rule that, "[a] party cannot take discovery for purposes unrelated to the lawsuit at hand." Echostar Communs. Corp. v. News Corp. Ltd. (D. Colo. 1998) 180 F.R.D. 391, 396.

Further, it has been noted by the United States Supreme Court that liberal discovery is provided for the sole purpose of assisting in the preparation and trial or the settlement of litigated disputes. Seattle Times Co. v. Rhinehart (1984) 467 U.S. 20, 34-35. However, liberal discovery has a significant potential for abuse when litigants seek information that is not only irrelevant, but potentially damaging to reputation and privacy. Id. at 35. That is exactly what is at issue here. Senator Galgiani is attempting to use the federal court's liberal discovery rules to further her own irrelevant political agenda, at the cost of having the COUNTY's ongoing criminal investigation and Wesley Shermantine's appeal compromised.

This motion should be denied.

**F.    THE PLAINTIFFS' MOTION IS PROCEDURALLY IMPROPER; IF CATHLEEN GALGIANI HAS A LEGITIMATE INTEREST IN VACATING OR MODIFYING THE PROTECTIVE ORDER, SHE NEEDS TO FILE A MOTION TO INTERVENE.**

If Senator Galgiani wishes to obtain access to all of the discovery in this action, because of a purported interest that she has, she needs to file a motion to intervene.

The proper means for a third party to seek access to protected discovery material is through intervention, rather than through modification of a protective order. Fed. Rules Civ.Proc., rule 24; In re Beef Industry Antitrust Litigation (5th Cir. 1979) 589 F.2d 786, 789; Public Citizen v. Liggett Group, Inc., (1st Cir. 1988) 858 F.2d 775, 783; Massachusetts v. Mylan Laboratories, Inc., (D. Mass. 2007) 246 F.R.D. 87, 91 ("While disclosure of discovery material might at times be

warranted to avoid wasteful duplication of discovery in other cases, absent an immediate threat to public health or safety, the first concern of a federal district court is with the resolution of the case at hand. The focus of the district court in ruling on modification of a protective order must remain on the parties in the current suit.").

The motion currently before the court has been filed by the Plaintiffs, not Senator Galgiani.  As such, the question before the court is whether the Plaintiffs have sufficiently demonstrated how the protective order actually could have or does prejudice *their* case, not whether it prejudices Senator Galgiani's ability to "obtain information as to the customary practice of the San Joaquin Sheriff Office in determining when to remove the name of missing persons from the NCIC Missing Persons Index."  (ECF No. 44, 10:16-19); Intel Corp. v. VIA Techs., Inc. (N.D. Cal. 2000) 198 F.R.D. 525, 528; Brown Bag Software v. Symantec Corp. (9th Cir. 1992) 960 F.2d 1465, 1470-1472.

Whether or not Senator Galgiani has good cause to modify or vacate the protective order is an issue for another day.

This motion should be denied.

## G.     THE PLAINTIFFS' ARGUMENT THAT MODIFICATION OF THE PROTECTIVE ORDER IS NECESSARY FOR FURTHER LEGISLATION AND TO UNDERSTAND THE NCIC PROCESS IS MERITLESS.

The Plaintiffs contend that modification of the protective order is necessary to allow Senator Galgiani to understand the NCIC process and create further legislation.  (ECF No. 44, 6:17-24.)  This purported interest is difficult to comprehend in light of the declaration by Allen Fox in support of the Plaintiffs' motion.  (ECF No. 44, Declaration of Allen Fox.)

Clearly, Mr. Fox understands the rules and protocol for data entry and modification of names in the NCIC, "I am aware of the protocol that in order to remove missing persons from the NCIC list, there is a required process that affords

oversight by law enforcement officers to ensure that the rules are properly followed." (ECF No. 44, Declaration of Allen Fox at ¶ 5, 6.)

Meanwhile, the Plaintiffs argue that modification of the protective order is necessary to "allow Ms. Galgiani and her legislative staff to better understand the process and procedure of local law enforcement agencies in the deletion of missing persons from the NCIC." (ECF No. 44, 6:14-16.) This makes no sense in light of Mr. Fox's declaration. Senator Galgiani does not need access to the COUNTY's sensitive investigative documents to understand the current NCIC procedures and protocol, she simply needs to consult with Mr. Fox.

Further, based on the Plaintiffs' own contentions, the alleged "removal" of Hobson's name from the NCIC by a COUNTY employee was done so, "without following protocol." (ECF No. 44, 7:12.) It is difficult to understand how "creating further legislation that rectifies deficiencies in reporting missing persons to both state and federal agencies" (ECF No. 44, 6:21-24) will solve the alleged problem of one COUNTY employee who failed to follow the protocol. The Plaintiffs are not contending that this is a widespread pervasive problem.

Just like the other reasons that the Plaintiffs contend make modification of the protective order necessary ("to allow Plaintiffs to properly investigate their claims against Defendant" and "to allow potential witnesses and the public access to all information"), these legislative reasons lack any evidentiary support or logic. (ECF No. 44, 6:4-24.)

Rather, these "reasons" are actually insincere pretexts used to further Senator Galgiani's irrelevant political agenda.

This motion should be denied.

///
///
///
///

### H.   THE CALIFORNIA DEPARTMENT OF JUSTICE HAS ALREADY ISSUED A PUBLIC STATEMENT EXPLAINING THE NCIC "CANCELLING" PROCESS, THEREBY MAKING THE PLAINTIFFS' ARGUMENTS NOW MOOT.

The Plaintiffs contend that Senator Galgiani, her staff and the public need access to all discovery in this case in order to understand the NCIC process and create legislation to rectify deficiencies of local law enforcement agencies in the deletion of missing persons from the NCIC.  (ECF No. 44, 6:14-24.)

They contend that "the removal of JoAnn Hobson's name from the NCIC Missing Person File by the San Joaquin County Sheriff's Office for no valid reason, and without following protocol, is simply unbearable."  (ECF No. 44, 7:10-12.)

However, since the filing of this motion, the COUNTY and the California Department of Justice ("DOJ") have issued a public statement clarifying the process of "cancelling" missing persons from the NCIC.  (**Exhibit C** to Berry Dec.)

On March 13, 2015, COUNTY Sheriff Steve Moore publicly explained, "there may have been confusion because the word 'cancel' is used when records are transferred from one department to another."  (**Exhibit C** to Berry Dec.)

The DOJ publicly issued a statement supporting Sheriff Moore, "The technical process of transferring records requires 'canceling' the record after the new record is created, to avoid duplication.  No information was destroyed or canceled."  (**Exhibit C** to Berry Dec.)

This statement dispels any contention that the Plaintiffs make, on Senator Galgiani's behalf, that Hobson's name was removed from the NCIC missing persons system.  (ECF No. 44, 8:27-28.)  It was not, it was transferred.

As a result, the Plaintiffs and Senator Galgiani can rest assured that what happened to Hobson's name in the NCIC database in 2010 did not, as they contend, "prevent the search and recovery" of any bodies, make anybody's

identification "impossible", or "thwart further investigation."  (ECF No. 44, 7:13-14, 8:27-9:2.)

No name was literally "cancelled" from the entire database.

As a result, the reasons that the Plaintiffs set forth for the need to vacate or modify the protective order are now moot.

This motion should be denied and the protective order kept in place as entered by the court.

Dated: April 8, 2015                    **MAYALL HURLEY, P.C.**

                                        /s/ Mark E. Berry
                                By: _____
                                    Mark E. Berry, Esq.
                                    Attorneys for Defendant
                                    COUNTY OF SAN JOAQUIN