UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAN SHELLEY, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>COUNTY OF SAN JOAQUIN, et al.,<br><br>    Defendants. | No. 2:13-cv-0266 MCE DAD<br><br><br>ORDER |

On April 17, 2015, this matter came before the undersigned for hearing of plaintiffs' motion to vacate the parties' stipulated protective order. Attorneys Mark Geragos, Sean Macias and Mark Connely appeared on behalf of the plaintiffs. Attorneys Mark Berry and Matthew Dacey appeared on behalf of the defendants. After hearing argument from the parties, the court took the motion under submission.

BACKGROUND

As explained by the assigned District Judge in this action, plaintiffs' complaint seeks to recover damages from the County of San Joaquin for the alleged violation of the U.S. Constitution during the exhumation of the body of plaintiffs' deceased relative, Jo Ann Hobson. (MTD Ord (Dkt. No. 32) at 1.) Jo Ann Hobson went missing in 1985 and it was suspected that she was a murder victim of Loren Herzon and Wesley Shermantine, "commonly referred to as the 'Speed Freak Killers.'" (Id. at 2.)

Plaintiffs commenced this action on February 11, 2013. (Dkt. No. 1.) On September 12, 2014, the parties filed a stipulation for a protective order with the court, but failed to submit a proposed protective order with the stipulation. (Dkt. No. 34.) Accordingly, on September 17, 2014, the parties again filed their stipulation for a protective order, originally agreed to on September 11, 2014, as well as a proposed protective order. (Dkt. No. 36.)

Pursuant to the parties' stipulation, plaintiffs and defendants "AGREED AND STIPULATED . . . that the documents produced by the COUNTY OF SAN JOAQUIN ["County"] pursuant to Plaintiffs' request for Production, Set #1 or subsequent productions," would be governed by the parties' stipulated protective order. (SPO (Dkt. No. 36) at 1-2.) In this regard, because "the documents produced by the [County] involve and (sic) open and ongoing criminal investigation and that the suspect in the murders described in the documents were all or in part at the hand of Wesley Shermantine," who also has a pending appeal of his criminal conviction, the parties expressed concern "that the release of the produced documents may negatively interfere with Shermantine's appeal process or negatively interfere with the continuing investigative efforts of the San Joaquin County Sheriff's Office or other law enforcement agency(s)." (Id. at 2.) Accordingly, the parties agreed and stipulated that the documents produced by the defendant County "shall be used by the parties solely for the purpose of prosecuting and defending" this action and "shall not be duplicated, reproduced, transmitted, or communicated to any person" other than plaintiffs' counsel, plaintiffs, declared experts, deposition witnesses, trial witnesses, mediators or the court. (Id. at 2.) The undersigned considered the parties' stipulation and entered an order adopting their stipulated protective order on September 24, 2014. (Dkt. No. 38.)

On March 9, 2015, plaintiffs filed a motion to vacate the stipulated protective order and set the matter for hearing before the undersigned on April 17, 2015.[1] (MTV (Dkt. No. 44.))

---

[1] In analyzing plaintiffs' motion, it is important to understand the nature of the parties' dispute. This is not a situation in which one party is seeking to avoid providing the other party with discovery documents that may be relevant and discoverable. Nor is this a situation in which a party is seeking to prevent a third party from intervening in the action and becoming a party to the stipulated protective order. Moreover, this is not a situation in which a party is asking the court to limit the public's access to judicial records. Plaintiffs' motion to vacate the stipulated protective

Plaintiffs' motion seeks an order allowing "the public access to all information, including but not limited to, discovery responses, deposition transcripts and documents produced in this case."[2] (MTV (Dkt. No. 44 at 2.) On April 8, 2015, the parties filed a joint statement re discovery disagreement. (JS (Dkt. No. 47.))

LEGAL STANDARDS

"Generally, the public can gain access to litigation documents and information produced during discovery unless the party opposing disclosure shows 'good cause' why a protective order is necessary." Phillips ex rel. Estates of Byrd v. General Motors Corp., 307 F.3d 1206, 1210 (9th Cir. 2002). See also Kamakana v. City and County of Honolulu, 447 F.3d 1172, 1180 (9th Cir. 2006) (unlike the case with respect to judicial records, "[a] 'good cause' showing will suffice to seal documents produced in discovery."); FED. R. CIV. P. 26(c)(1) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."). "While courts generally make a finding of good cause before issuing a protective order, a court need not do so where . . . the parties stipulate to such an order. When the protective order was a stipulated order and no party has made a good cause showing, then the burden of proof remains with the party seeking protection." In re Roman Catholic Archbishop of Portland in Oregon, 661 F.3d 417, 424 (9th Cir. 2011) (quotations and alterations omitted), cert. denied ___U.S.___, 132 S. Ct. 1867 (2012).

When the confidentiality of information produced under a protective order is challenged, the court must conduct a two-step analysis. "First, it must determine whether particularized harm

---

order does not challenge the sufficiency of the discovery defendant has produced in this action. Likewise, defendant is not arguing that the plaintiffs should be denied access to some document or that a document should be entered into the judicial record under seal. Instead, this dispute concerns whether, after previously agreeing to keep the documents provided to plaintiffs by defendant confidential, plaintiffs should now be relieved of the terms of their agreement and freely disseminate those documents to the public as plaintiffs see fit.

[2] In their motion plaintiffs assert, in a conclusory manner, that the parties' stipulated protective order must be vacated or modified "[t]o allow Plaintiffs to properly investigate their claims against Defendant." (Pls.' MTV (Dkt. No. 44) at 2.) When asked about this statement at the April 17, 2015 hearing, plaintiffs were unable to articulate any support for this assertion and none is apparent to the undersigned. Again, nowhere in their motion do plaintiffs suggest that defendant has withheld any discovery from them.

will result from disclosure of information to the public." Id. (quotation omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." Id. (quoting Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992) (citation omitted)). "Second, if the court concludes that such harm will result from disclosure of the discovery documents, then it must proceed to balance 'the public and private interests to decide whether [maintaining] a protective order is necessary.'" Id. (quoting Phillips, 307 F.3d at 1211.) The Ninth Circuit has "directed courts doing this balancing to consider the factors identified by the Third Circuit in Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995))." Id. (citing Phillips, 307 F.3d at 1211.)

In Glenmede Trust, the Third Circuit recognized several factors that a district court may consider in determining whether "good cause" exists to continue the protection of the discovery material produced pursuant to a stipulated protective order:

> 1) whether disclosure will violate any privacy interests; 2) whether the information is being sought for a legitimate purpose or for an improper purpose; 3) whether disclosure of the information will cause a party embarrassment; 4) whether confidentiality is being sought over information important to public health and safety; 5) whether the sharing of information among litigants will promote fairness and efficiency; 6) whether a party benefitting from the order of confidentiality is a public entity or official; and 7) whether the case involves issues important to the public.

56 F.3d at 483 (citing Pansy v. Borough of Stroudsburg, 23 F.3d 772, 787-91 (3rd Cir. 1994)). The court in Glenmede Trust also advised that:

> Discretion should be left with the court to evaluate the competing considerations in light of the facts of individual cases. By focusing on the particular circumstances in the cases before them, courts are in the best position to prevent both the overly broad use of [protective] orders and the unnecessary denial of confidentiality for information that deserves it.

Id. (quoting Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv. L. Rev. 427, 492 (1991)).

/////

/////

/////

4

ANALYSIS

I.   Whether Particularized Harm Will Result From Disclosure to the Public

Here, the protective order was issued based upon the parties' stipulation which stated "that the release of the produced documents may negatively interfere with Shermantine's appeal process or negatively interfere with the continuing investigative efforts of the San Joaquin County Sheriff's Office or other law enforcement agency(s)." (SPO (Dkt. No. 38) at 2.)  In opposing plaintiffs' current motion to vacate the stipulated to protective order, defendant explains that the documents produced to plaintiffs in discovery included "numerous inter-office memoranda between County investigators regarding the recovery of Hobson's remains, investigative reports regarding Hobson's disappearance, and communications regarding the criminal investigation of Wesley Shermantine and Loren Herzog." (JS (Dkt. No. 47) at 13.)  Defendant notes that Wesley Shermantine has "never stated that he had killed or been involved in the killing of Hobson." (Id. at 17.)

Accordingly, the defendant County argues that the documents produced in discovery subject to the stipulated protective order "directly relate to [an] ongoing criminal investigation and Shermantine's pending criminal appeal in another matter." (Id. at 20-21.)  In support of this assertion, the County cites to the declaration of Sergeant Chanda Bassett of the San Joaquin County Sheriff's Department.  Because Sergeant Bassett's declaration has been filed under seal, the substance of the statements made therein will not be revealed in this order.[3]  However, the undersigned notes that the declaration supports the County's assertion that the documents produced in discovery pursuant to the stipulated protective order concern an open and ongoing criminal investigation and that the disclosure of some documents could plausibly undermine that investigation. (Dkt. No 48.)

Conversely, in arguing to vacate the stipulated protective order plaintiffs offer merely a conclusory allegation that "there is no current criminal investigation regarding JoAnn Hobson's

---

[3] In an order signed January 24, 2014, the assigned District Judge found good cause to file the declaration of Sergeant Chanda Bassett "Re: Status of Criminal Investigation" under seal. (Dkt. No. 31.)

5

1  death." (Id. at 8.) Plaintiffs, however, offer nothing further in support of that assertion.

2  The undersigned finds that the defendant has made a specific and particularized showing that harm will result from disclosure of the documents to the public. See United States v. Smith, 985 F.Supp.2d 506, 531 (S.D. N.Y. 2013) ("the Court finds that the letter adequately establishes both that there are ongoing investigations into criminal conduct related to the discovery materials in this Case, and that public disclosure of some of these materials plausibly could undermine these investigations"); Flagg ex rel. Bond v. City of Detroit, 268 F.R.D. 279, 294 (E.D. Mich. 2010) ("the Court's first and foremost concern in restricting public access to certain discovery materials and processes has been to ensure that the parties' discovery efforts do not interfere with the active and ongoing investigation into the murder . . . "); Tuite v. Henry, 181 F.R.D. 175, 179 (D. D.C. 1998) ("The court is unable to simply discount the weight of the declaration offered by Shaheen in determining whether OPR has demonstrated that disclosure will result in particularized harm to governmental processes."). See generally Center for Nat. Sec. Studies v. U.S. Dept. of Justice, 331 F.3d 918, 926 (D.C. Cir. 2003) ("Congress recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations"); United States v. Valenti, 987 F.2d 708, 714 (11th Cir. 1993) ("we hold that the district court properly denied the Times's emergency motion to unseal as a necessary means to achieving the government's compelling interest in the protection of a continuing law enforcement investigation"); Coughlin v. Lee, 946 F.2d 1152, 1159 (5th Cir. 1991) ("Federal common law recognizes a qualified privilege protecting investigative files in an ongoing criminal investigation[.]"); Swanner v. United States, 406 F.2d 716, 719 (5th Cir. 1969) ("pendency of a criminal investigation is a reason for denying discovery of investigative reports").

Having reached this conclusion, the court must proceed to balance the public and private interests to decide whether maintaining the stipulated protective order is necessary in this instance.

/////

/////

6

II. Balancing the Public and Private Interests

  1) Whether Disclosure Will Violate Any Particular Privacy Interests

"[P]rivacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny." Pansy, 23 F.3d at 787. Here, the party seeking protection from disclosure, the County, is a public entity subject to legitimate public scrutiny and, therefore, has a diminished privacy interest.

Nonetheless, as stated above, the defendant has a clear privacy interest in maintaining the confidentiality of an open and ongoing criminal investigation. See Peate v. McCann, 294 F.3d 879, 885 (7th Cir. 2002) ("the government has an interest in maintaining the confidentiality of files containing sensitive information regarding on-going investigations"); United States v. Amodeo, 71 F.3d 1044, 1050 (2nd Cir. 1995) ("If release is likely to cause persons in the particular or future cases to resist involvement where cooperation is desirable, that effect should be weighed against the presumption of access."); Hill v. City of Chicago, Case No. 06 C 6772, 2011 WL 320204, at *2 (N.D. Ill. Jan. 31, 2011) (plaintiff's interest in "civil matter do not outweigh the City's interest in keeping this ongoing, active criminal investigation confidential to prevent any harm from public disclosure of the content of the investigation."); United States v. Park, 619 F.Supp.2d 89, 94 (S.D. N.Y. 2009) (holding that the need to "maintain the secrecy of the Government's investigation" outweighed the public's right of access to sentencing documents).

Accordingly, based upon the present showing the undersigned finds that consideration of this factor also weighs in favor of maintaining the stipulated protective order.

  2) Whether the Information is Being Sought for a Legitimate Purpose

An improper purpose for seeking disclosure of information would include the use of the produced discovery materials "to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." Kamakana, 447 F.3d at 1179. Here, there is no compelling indication that plaintiffs seek to disclose the materials produced in discovery for an improper purpose. Accordingly, consideration of this factor weighs in favor of modifying the protective order.

3)  Whether Disclosure of the Information will Cause a Party Embarrassment

Here there is no indication that the disclosure of the materials produced in discovery by defendants pursuant to the stipulated protective order will cause a party embarrassment. The undersigned is, however, concerned about the potential that non-parties identified in a criminal investigative report could suffer embarrassment from the public dissemination of that document.

Accordingly, the undersigned finds that consideration of this factor weighs only slightly in favor of modifying the protective order.

4)  Whether Confidentiality is Being Sought Over Information Important to Public Health and Safety

According to the parties, the discovery produced which is at issue here concerns the maintenance of missing persons entries on the National Crime Information Center Missing Person File and the open criminal investigation of several unsolved murders potentially involving two serial killers. Clearly, those matters concern information important to public safety.

However, in their stipulation in support of the protective order both parties agreed that these documents concern on-going criminal investigations, that Wesley Shermantine is a suspect in connection with those investigations, that Shermantine has an appeal "of his criminal conviction pending and that the release of the produced documents may negatively interfere with Shermantine's appeal process or negatively interfere with the continuing investigative efforts of the San Joaquin County Sheriff's Office or other law enforcement agency(s)." (SPO (Dkt. No. 38) at 2.) Although plaintiffs presumably did not have access to the discovery documents at issue when they entered into the stipulated protective order, plaintiffs did have those documents when they brought the pending motion and they have not challenged the veracity of the representations made in the stipulation they previously entered into.

In this regard, the effectiveness of on-going criminal investigations is also clearly important to public safety. See Black v. Sheraton Corp. of America, 564 F.2d 531, 545 (D.C. Cir. 1977) ("there is indeed a public interest in minimizing disclosure of documents that would tend to reveal law enforcement investigative techniques or sources"); United States v. James, 663 F.Supp.2d 1018, 1021 (W.D. Wash. 2009) ("the Court finds that Ms. James and the public have

an interest in continuing to protect the details of Ms. James' cooperation to protect her safety and that of her family and to further the on-going investigation").

In light of the competing interests related to public safety, the undersigned finds that consideration of this factor tips in favor of maintaining the stipulated protective order.

5) Whether the Sharing of Information Among Litigants Will Promote Fairness and Efficiency

All of the litigants in this action already possess the discovery materials at issue here. Although plaintiffs' counsel asserted at the April 17, 2015, hearing that there may possibly be litigants in other future actions who could benefit from access to the materials produced in discovery in this case, that assertion remains purely speculative at this point. The undersigned finds that consideration of this factor weighs slightly in favor of maintaining the stipulated protective order given the present showing.

6) Whether a Party Benefitting From the Order of Confidentiality is a Public Entity

The County is the party benefitting from the stipulated protective order and is a public entity. See LEAP Systems, Inc. v. MoneyTrax, Inc., 638 F.3d 216, 222 (3rd Cir. 2011) ("we are more likely to require disclosure when a party benefitting from the order of confidentiality is a public entity or official").

The undersigned finds that consideration of this factor weighs in favor of modifying the stipulated protective order.

7) Whether the Case Involves Issues Important to the Public

As noted above, the issue in this case is whether the County of San Joaquin violated plaintiffs' right to substantive due process during the exhumation of the body of plaintiffs' deceased relative. Clearly the case involves issues important to the public. It is less clear that the discovery produced by defendants pursuant to the stipulated protective order, which plaintiffs now wish to publicly disseminate, relates to any of the issues involved in this case. In this regard, plaintiffs assert that the "evidence in this matter addresses significant public interest regarding the maintenance and removal of missing persons entries from the NCIC Missing Person File." (JS (Dkt. No. 47) at 8.) That, however, is not what is at issue in this civil action.

The undersigned finds that consideration of this factor also weighs in favor of maintaining the stipulated protective order.

Thus, consideration of these relevant factors weighs slightly in favor of maintaining the stipulated protective order. However, the court's tasks is not merely to count the factors that weigh in favor of against the protective order in making this determination but instead to "balance 'the public and private interests to decide whether maintaining [the] protective order is necessary." In re Roman Catholic, 661 F.3d at 424 (quoting Phillips, 307 F.3d at 1211).

III.    Additional Considerations

The undersigned observes that plaintiffs' motion to vacate and the parties' joint statement re discovery dispute failed to thoroughly address the relevant legal standards and factors discussed above. Moreover, it is noteworthy that the parties' own stipulation in support of the issuance of the protective order specifically stated that the discovery materials at issue involved an open and ongoing criminal investigation and that the public dissemination of those materials could negatively impact that criminal investigation and possibly could even interfere with Wesley Shermantine's appeal.

Although it is likely that plaintiffs did not have access to the discovery materials prior to executing the stipulated protective order, since the parties entered into that stipulation defendant has produced to plaintiffs "well over two thousand pages of discovery documents in response to the Plaintiffs' production requests." (JS (Dkt. No. 47) at 13.) Plaintiffs have not challenged the representation made in their prior stipulation that the documents at issue concern an on-going criminal investigation and that their public dissemination could negatively impact that investigation. Moreover, plaintiffs have not challenged the need for confidentiality with respect to any specific document produced to them in discovery by defendant.[4] Because no specific document has been brought before the court for consideration, the undersigned cannot determine

---

[4] The court is mindful of the fact that the documents at issue are subject to the protection of the parties' stipulated protective order. However, as counsel is aware, there are procedures available – including submission for in camera review – allowing a party to challenge the confidentiality of a document without first disclosing that document on the public record. See Local Rules 140, 141 and 141.1.

whether, for instance, redaction of the particular document would allow for its public disclosure. In re Roman Catholic, 661 F.3d at 425.

In addressing the evidentiary burdens where the application of a broad protective order is challenged with respect to certain documents produced in discovery, one federal appellate court has observed as follows:

> It is correct that the burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the protective order; any other conclusion would turn Rule 26(c) on its head. That does not mean, however, that the party seeking the protective order must necessarily demonstrate to the court in the first instance on a document-by-document basis that each item should be protected. It is equally consistent with the proper allocation of evidentiary burdens for the court to construct a broad 'umbrella' protective order upon a threshold showing . . . of good cause. Under this approach, the umbrella order would initially protect all documents that the producing party designated in good faith as confidential. After the documents delivered under this umbrella order, the opposing party could indicate precisely which documents it believed to be not confidential, and the movant would have the burden of proof in justifying the protective order with respect to those documents. The burden of proof would be at all times on the movant; only the burden of raising the issue with respect to certain documents would shift to the other party.

Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1122 (3rd Cir. 1986). See also Pansy, 23 F.3d at 787, n. 17; In re Alexander Grant & Co. Litigation, 820 F.2d 352, 356 (11th Cir. 1987).

Finally, the Ninth Circuit has previously recognized that another relevant consideration is whether a party has relied on a stipulated order in producing discovery. See Pansy, 23 F.3d at 789 ("In determining whether to modify an already-existing confidentiality order, the parties' reliance on the order is a relevant factor."); Beckman, 966 F.2d at 475 ("A related concern is the reliance interests of the party opposing modification."); SRS Technologies, Inc. v. Physitron, Inc., 216 F.R.D. 525, 530 (N.D. Ala. 2003) ("The absence of repeated objections to discovery evidences the Defendants' reliance upon the protection order. Plaintiff now wants to un-do the protective order to which it consented and upon which Defendants relied during the course of discovery.") In this action, defendant clearly did so and consideration of this factor weighs in favor of maintaining the parties' stipulated protective order.

/////

1    In this case, the court adopted the parties' stipulated protective order prohibiting the
2  public dissemination of those documents based upon their representation that the discovery
3  documents at issue involve an open and ongoing criminal investigation and that their public
4  disclosure could interfere with that investigation and the pending appeal of a convicted serial
5  killer.  Defendants in turn relied on that stipulated protective order in producing those materials to
6  plaintiffs.  Plaintiffs now ask the court to vacate that order in its entirety and allow them to
7  publicly disseminate the documents produced to them in discovery.  Plaintiffs do so without
8  meaningfully addressing either their own prior representation contained in the stipulation or
9  defendant's continued representation that the public release of those documents could negatively
10  impact an ongoing criminal investigation and possibly the pending appeal of a convicted serial
11  killer**.**  Finally, plaintiffs have failed to address any specific document they now believe should
12  not be subject to the protective order which they agreed to.  Under these circumstances, the
13  undersigned cannot ignore the potential harm to public safety posed by vacating the parties'
14  stipulated protective order indiscriminately.

## CONCLUSION

16    Having balanced the public and private interests to determine whether maintaining the
17  stipulated protective order is necessary, as required by Ninth Circuit precedent, the undersigned
18  finds that, as currently presented, the balance tips in favor of maintaining the parties' stipulated
19  protective order.  That conclusion is reached primarily in light of the risk that the indiscriminate
20  public disclosure poses to the open and ongoing criminal investigation and, to a lesser degree,
21  based upon the potential risk that the public disclosure could have on Wesley Shermantine's
22  pending criminal appeal, the imperilment of either of which could potentially endanger public
23  safety.
24  /////
25  /////
26  /////
27  /////
28  /////

Accordingly, plaintiffs' March 9, 2015, motion to vacate the parties' stipulated protective order (Dkt. No. 44) is denied without prejudice to the filing of a new motion.[5]

IT IS SO ORDERED.

Dated: May 1, 2015

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1\orders.civil\shelley0266.oah.041715

---

[5] Of course, the appropriate degree of confidentiality differs depending on the stage of the litigation. Information that the parties kept confidential during discovery, may be treated differently if attached to a non-dispositive motion and still differently if attached to a dispositive motion. See generally Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33 (1984) ("Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."); California ex rel. Lockyer v. Safeway, Inc., 355 F.Supp.2d 1111, 1115 (C.D. Cal. 2005) ("the Ninth Circuit has drawn a sharp distinction between the impact of protective orders on the public's right of access to raw discovery and non-dispositive motions, and the impact of such orders on the public's right of access to dispositive motions, such as a summary judgment motion").